IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DEREK DEDE, #253851, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No.  1:07-CV-929-WKW |
| | ) |
| SHERIFF BEN MOATES, et al., | ) |
| | ) |
|     Defendants. | ) |

## DEFENDANTS' SPECIAL REPORT

COME NOW Ben Moates, Zack Ennis, Richard Moss, Candida Stokes, Austin Redman, and Jeffrey Shelton, Defendants in the above-styled cause, and submit their Special Report to the Court.

## INTRODUCTION

On April 24, 2007, the Plaintiff originally brought suit against former Coffee County Sheriff Ben Moates and former Coffee County Jail Administrator Zack Ennis alleging that he had been exposed to tuberculosis (hereinafter "TB") and denied medical care.  (See Dede v. Moates, United States District Court for the Middle District of Alabama, Case No. 1:07-cv-344-MEF-SRW, Doc. 1.)  The Plaintiff's first lawsuit was dismissed on August 29, 2007, when the Plaintiff failed to respond to the Defendants' Special Report as ordered.  Id. at Docs. 16, 17, 18.  Less than two months later, the Plaintiff began the instant litigation.  (Doc. 1.)  The Plaintiff's latest lawsuit rehashes the same claims of his previous lawsuit including an alleged exposure to TB and denial of medical care for headaches and dizziness.  Id. at pp. 2-3; Doc. 1-3 at pp. 1-2.  The Plaintiff has, however, added a new claim that he was "traumatized" when deputies and jail staff were forced to quell a riot in the Plaintiff's cell block.  Id. at p. 3.  The Defendants have been ordered to file a Special Report and Answer.

## PLAINTIFF'S ALLEGATIONS

The Plaintiff makes two federal deliberate indifference claims and what appears to be a state law intentional infliction of emotional distress claim. The two deliberate indifference claims are both medically related – one for being exposed to TB and the other for providing inadequate medical treatment. The Plaintiff bases his infliction of emotional distress claim upon the "trauma" he suffered when deputies used force on other inmates to regain control of the Plaintiff's cell block during a riot.

## DEFENDANTS' RESPONSE TO PLAINTIFF'S ALLEGATIONS

The Defendants deny the allegations made against them by Plaintiff as being untrue and completely without basis in law or fact. The Defendants deny that they acted, or caused anyone to act, in such a manner as to deprive Plaintiff of any right to which he was entitled. The Defendants raise the defenses of Eleventh Amendment immunity, qualified immunity, and additional defenses presented below. The Defendants reserve the right to add additional defenses if any further pleading is required or allowed by the Court.

## I.    FACTS

Plaintiff was incarcerated in the Coffee County Jail on November 17, 2005, on charges of robbery in the first degree. (Exhibit A, Inmate File of Derek Dede, "Inmate File," Intake Sheet.)

### A.    Plaintiff's Medical Treatment

It is the policy of the Coffee County Jail that inmates receive necessary medical care. (Exhibit B, Declaration of Ben Moates, "Moates dec.," ¶ 5; Exhibit C, Declaration of Zack Ennis, "Ennis dec.," ¶ 5.) It would be a violation of policy for anyone to deny an inmate necessary medical care. (Moates dec. ¶ 5; Ex C, Ennis dec. ¶ 5.) Nonetheless, the Plaintiff alleges that he was exposed to TB and was not given adequate treatment for headaches and dizziness.

1.    **Tuberculosis.**

At the relevant time, the Coffee County Jail had a policy of screening inmates for TB. (Moates dec. ¶ 3; Ennis dec. ¶ 10.)  Inmates were questioned about TB exposure during the booking process.  Id.  The Plaintiff claims that he was housed with another inmate, Dennis Cooper, who allegedly had TB.  (Doc. 1., p. 3.)  Mr. Cooper was incarcerated in the Coffee County Jail from November 28, 2006 to May 16, 2007.  (Moates dec. ¶ 8.)  The Plaintiff alleges that he contracted TB from Mr. Cooper.  (Doc. 1 at pp. 2-3.)

There are four factual problems with the Plaintiff's claim.  First, the Plaintiff tested positive for exposure to TB *before* Mr. Cooper was incarcerated.  On July 26, 2006 – four months prior to Mr. Cooper's incarceration – the Plaintiff tested positive for exposure to TB. (Exhibit D, Declaration of Stanley Roberts, "Roberts dec.", ¶¶ 3, 9.) [1]

Second, Mr. Cooper was medically cleared to be placed in general population.  Dr. Preyear stated that Mr. Cooper was not contagious, if in fact he had TB, because he was taking the medication provided by the Health Department, as prescribed, and as a result, he was allowed to mix with the general population.  (Roberts dec. ¶ 14.)  Cooper received his medication.  Id.

Third, the Plaintiff had chest x-rays that confirmed he did *not* have TB.  Following his positive screening, the Plaintiff was given a chest x-ray on August 16, 2006.  (Roberts dec. ¶ 16.) The x-ray was negative.  Id., Exhibit E, Inmate File, Grievance Form dated 8/23/06.

Fourth, the Plaintiff was given preventative medications following his positive exposure test.  The Health Department prescribed the Plaintiff INH and B-6 vitamins.  (Roberts dec. ¶ 18.) The Plaintiff received these medications.  Id.; see also Exhibit F, Inmate File, Medication Records for INH; Exhibit G, Inmate File, Medication Records for Vitamin B-6.

---

[1] Stanley Roberts is a corrections officer who worked at the jail at the time the Plaintiff and Mr. Cooper were housed together.  His declaration was provided as part of the Defendants' Special Report in the Plaintiff's first lawsuit.

Additionally, several of the Defendants were not involved with the provision of health care to the Plaintiff. Defendant Ennis was not employed at the jail when Mr. Cooper was initially incarcerated. (Ennis dec ¶¶ 1, 7.) Defendant Moss did not start work until January 16, 2007, long after the Plaintiff's alleged exposure. (Exhibit H, Affidavit of Richard Moss, "Moss aff." ¶ 4.) Defendants Stokes, Redman, and Shelton are deputies who do not work in the jail. (Exhibit I, Declaration of Candida Stokes, "Stokes dec.", ¶4; Exhibit J, Affidavit of Austin Redman, "Redman aff.", ¶ 4; Exhibit K, Affidavit of Jeffrey Shelton, "Shelton aff.", ¶ 4.)

## 2. Headaches and Dizziness.

Plaintiff first complained about his alleged headaches and dizziness in an inmate grievance form on May 3, 2006. (Roberts dec. ¶ 4.) On June 7, 2006, Plaintiff was transported to see Dr. Cochran for his complaints of headaches and dizziness. (Exhibit L, Inmate File, Medical Transport Sheet dated 6/7/06; Roberts dec. ¶ 5.) Dr. Cochran noted that Plaintiff complained of headaches, dizziness, that he had passed out twice in the prior week, and a knot on his back. (Exhibit M, Inmate File, Patient Record dated 6/7/06; Exhibit N, Declaration of Henry Stewart Cochran, "Cochran dec.", ¶ 4.)[2] Dr. Cochran diagnosed Plaintiff as suffering from muscle-tension headaches, and found no indication of any other condition that would contribute to his dizziness or passing out. (Cochran dec. ¶ 8.) Regarding the knot on Plaintiff's back, Dr. Cochran determined that it was a lypoma, or a benign fat cell tumor that required no medical treatment. Id. at ¶¶ 6, 7, 10. Dr. Cochran prescribed Plaintiff Norgesic Forte for the muscle-tension headaches, and Plaintiff was provided that medication at the Coffee County Jail. (Cochran dec. ¶ 9; Roberts dec. ¶ 6.)

On September 1, 2006, Plaintiff was, again, transported to Dr. Cochran for an evaluation of his complaints of headaches and dizziness. (Exhibit O, Inmate File, Medical Transport Sheet

---

[2] As with Officer Roberts, Dr. Cochran's declaration was obtained in the previous litigation and is used again here because the allegations are the same.

dated 9/1/06; Cochran dec. ¶ 11; Roberts dec. ¶ 7.)  The Plaintiff told Dr. Cochran that he began

passing out on May 6, 2006, and that he was unable to take the Norgesic Forte Dr. Cochran had

prescribed because it gave him rectal bleeding.  (Inmate File, Medical Transport Sheet dated

9/1/06; Cochran dec. ¶ 11.)  Dr. Cochran refused to see Plaintiff again, because he was

combative and verbally abusive.  (Inmate File, Medical Transport Sheet dated 9/1/06; Cochran

dec. ¶ 12.)

On October 5, 2006, Plaintiff was then taken to Dr. Roberts at the Elba General Hospital

for an evaluation of his complaints about headaches and dizziness.  (Exhibit P, Inmate File,

Medical Transport Sheet dated 10/5/06; Roberts dec. ¶ 9.)  Dr. Roberts prescribed Keflex for the

Plaintiff's headaches, and Plaintiff was provided that medication at the Coffee County Jail.

(Roberts dec. ¶ 10.)  Dr. Roberts also scheduled Plaintiff for a CT scan of his head.  (Roberts

dec. ¶ 10.)  On October 6, 2006, Plaintiff was transported to the Elba General Hospital for a CT

scan of his head.  (Exhibit Q, Inmate File, Medical Transport Sheet dated 10/6/06; Roberts dec. ¶

11.)  Dr. Roberts provided no further instructions regarding Plaintiff's medical care.  (Roberts

dec. ¶ 11.)

As with the Plaintiff's TB claims, several of the Defendants were not involved at all in

the Plaintiff's medical treatment for the alleged headaches and dizziness.  Deputies Stokes,

Redman, and Shelton, have no duties in the jail.  Defendant Moss did not become jail

administrator until after the Plaintiff received his CT scan.

**B.    The March 3, 2007 Riot.**

On March 3, 2007, just two days after a devastating tornado struck Enterprise, Alabama,

an inmate riot broke out at the Coffee County Jail.  (Shelton aff. ¶¶ 5-7; Redman aff., ¶¶ 5-7;

Moss aff. ¶ 10; Stokes dec. ¶¶ 5-6.)  The inmates in Cell Block 2 refused to lock-down because

they did not get a second smoke break prior to lock-down.  (Moss dec. ¶ 10.)  A week prior to the

riot, at least one shank was discovered and removed from Cell Block 2. (Shelton aff. ¶ 8; Redman aff., ¶ 8.) The inmates were fighting and refusing orders to lock down. (Shelton aff. ¶ 7; Redman aff. ¶ 7.) The staff at the jail sent out radio calls for assistance, and nearby officers, who were participating in search and recovery operations in response to the tornado damage in Enterprise, came to the jail to help control the riot. (Shelton aff. ¶¶ 5-6; Redman aff. ¶¶ 5-6; Stokes dec. ¶¶ 5-6.)

Deputy Candida Stokes arrived at the Coffee County Jail to help restore order in Cell Block 2, and subdue the 43 inmates who were rioting. (Stokes dec. ¶ 7.) She encountered an inmate, Marcus Snell, who began cursing her immediately, and when he twice refused her orders to return to his cell and continued to curse her, she used the TASER in "drive stun" mode against him. Id. at ¶¶ 8-11. After Deputy Stokes subdued Snell, she placed handcuffs on him and took him into custody. Id. at ¶¶ 11-12. As Deputy Stokes was escorting Snell from his cell to processing, Alex Pyatt, an inmate in Cell 17 in the upper tier of the cell block, threw urine on Deputy Stokes. Id. at ¶ 12. Deputy Stokes informed Deputies Shelton, Redman, and Bradley of the incident as they were arriving to help quell the riot. (Stokes dec. ¶ 13; Shelton aff. ¶ 11; Redman aff. ¶ 11.)

In retaking the cell block, the deputies were required to use force against some of the inmates. Deputy Shelton fired two bean bag rounds from his shotgun. (Shelton aff. ¶ 12.) Another deputy, Neal Bradley, used his TASER on Inmate Timothy Council. (Redman dec. ¶¶ 13-28.) However, no one used any force against the Plaintiff as he apparently remained in his cell during the entire incident. In fact, in a grievance he filed after the incident, the Plaintiff reported only that his sleep had been disturbed. (Moss aff. ¶ 19.)

II.    **LAW**

    A.    **All claims by Plaintiff against the Defendants in their official capacities must fail based on Eleventh Amendment immunity and because they are not "persons" under 42 U.S.C. § 1983.**

Plaintiff's claims against the Defendants in their official capacities are due to be dismissed for lack of subject matter jurisdiction; as such claims are barred by the Eleventh Amendment to the United States Constitution.  Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Carr v. City of Florence, 918 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Lancaster v. Monroe County, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs).

In addition, the official capacities claims must fail because 42 U.S.C. § 1983 prohibits a person, acting under color of law, from depriving another of his rights secured by the United States Constitution.  42 U.S.C. § 1983 (emphasis added).  The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983.  Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989).  Any official capacity claims against the Defendants should therefore be dismissed because the Defendants are not "persons" under § 1983 and therefore all official capacity claims fail to state a claim upon which relief can be granted.  Id.; Carr, 916 F.2d at 1525 n.3.

**B.     The Defendants are Entitled to Absolute and Qualified Immunity.**

Plaintiff's claims are barred on two additional immunity grounds.  First, the Defendants are absolutely immune under Article I, § 14 of the Alabama Constitution of 1901 in both their official and individual capacities to the Plaintiff's state law claim.  Second, in their individual capacities, the Defendants are entitled to qualified immunity to Plaintiff's federal claims.

**1.     The Defendants are entitled to absolute immunity to Plaintiff's state law Infliction of Emotional Distress claim.**

The Defendants are absolutely immune to all claims for money damages under Article I, § 14 of the Alabama Constitution of 1901.  Article I, § 14 of the Alabama Constitution of 1901 provides "[t]hat the State of Alabama shall never be made a defendant in any court of law or equity."  This section grants the State and its agencies an "absolute" immunity from suit in any court.  Ex parte Mobile County Dep't of Human Res., 815 So. 2d 527, 530 (Ala. 2001).  Section 14 immunity bars "almost every conceivable type of suit."  Hutchinson v. Bd. of Trustees of Univ. of Ala., 256 So. 2d 281, 283 (Ala. 1971).  Section 14 immunity is "nearly impregnable." Patterson v. Gladwin Corp., 835 So. 2d 137, 142 (Ala. 2002).

The Sheriff of Coffee County is an executive branch constitutional officer of the State of Alabama.  See Article V, § 112 of the Alabama Constitution of 1901; see also McMillian v. Monroe County, 520 U.S. 781, 793 (1997) (holding that an Alabama sheriff acts for the state and not his county when carrying out law enforcement duties); Carr v. City of Florence, 916 F.2d 1521, 1525-26 (11th Cir. 1990).  Therefore, a suit against him is a suit against the State of Alabama.  See Hafer v. Melo, 502 U.S. 21, 25 (1991); Lancaster v. Monroe County, 116 F.3d 1419, 1429 (11th Cir. 1998).  Similarly, because the other Defendants, as deputies or jailers, act for the Coffee County Sheriff, they are also considered to be state constitutional officials.

Lancaster, 116 F.3d at 1429 (jailers); Tinney v. Shores, 77 F.3d 378, 383 (11th Cir. 1986) (deputies).

As executive branch, constitutional officers of the State at the time of the alleged incidents, the Defendants are immune from suit under Article I, § 14 of the Alabama Constitution of 1901. This section immunizes them from ***all*** state law claims, including claims for infliction of emotional distress, even though they are sued in their individual capacities. Tinney, 77 F.3d at 383 (holding sheriff and deputy sheriff were entitled to state sovereign immunity); Lancaster, 116 F.3d at 1431 (holding sheriff and jailers were entitled to sovereign immunity); Parker v. Amerson, 519 So. 2d 442, 445 (1987) (holding the Sheriff immune from suit although sued "individually, and as Sheriff"); Ex parte Purvis, 689 So. 2d 794, 796 (Ala. 1996) (holding sheriff and deputy were entitled to sovereign immunity in both their individual and official capacities); Ex parte Haralson, 871 So. 2d 802, 807 (Ala. 2003) (holding deputy sheriff entitled to sovereign immunity).

There are, however, limited exceptions to this immunity. An Alabama sheriff is immune from suit:

> except for actions brought (1) to compel him to perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin him from enforcing unconstitutional laws, (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act if he is a necessary party for the construction of the statute.

Parker, 519 So. 2d at 443. Accordingly, even in situations where sheriffs and their employees are sued for negligence or bad faith, the only exceptions to sovereign immunity allowed by the Alabama Supreme Court under Art. 1, § 14 of the Alabama Constitution of 1901, are to enjoin their conduct. Alexander v. Hatfield, 652 So. 2d 1142, 1143 (Ala. 1994). With only these narrow exceptions, Alabama sheriffs and their deputies and jailers are immune from suit. Ex parte Purvis, 689 So. 2d at 796; Ex parte Blankenship, 893 So.2d 303, 305 (Ala. 2004).

As an initial matter, neither Sheriff Moates nor Administrator Ennis were in office when the jail was retaken on March 3, 2007. (Moates dec. ¶ 1; Ennis dec. ¶ 1.) Consequently, the Plaintiff cannot make a claim for intentional infliction of emotional distress against them. The then-serving Administrator, Richard Moss, did not arrive at the jail until the Plaintiff's cell block was back under control. (Moss dec. ¶ 12.) Accordingly, he too cannot be held liable for any alleged emotional distress the Plaintiff may have suffered.

Here, Plaintiff has alleged that at all times relevant he was an inmate in the Coffee County Jail. It is clear that in retaking the jail, Defendants Shelton, Stokes and Redman were acting within the scope of their duties as sheriff's deputies. It is only in those capacities that they had the duty and authority to enter into cell block 2 and quell the riot. The Plaintiff is seeking money damages. (Doc. 1 at p. 4.) Accordingly, as the Defendants are being sued for actions taken in the line and scope of their duties and Plaintiff seeks money damages for his negligence claim, that claim is barred by Article I, § 14 of the Alabama Constitution of 1901.

> **2. The Defendants are entitled to qualified immunity because nothing in their conduct crossed a "bright line" contour of clearly established constitutional law.**

The Defendants were acting within their discretionary authority during all times relevant to Plaintiff's Complaint because all their actions were taken in the furtherance of their duties as sheriff, jail administrator, or deputy. See, e.g. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252 (11th Cir. 2004). Once a defendant has asserted the defense of qualified immunity and shown that he was acting within his discretionary authority, the threshold inquiry a court must undertake is whether Plaintiff's allegations, if true, establish a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)). As set

forth previously, the Complaint appears to state two federal claims. Plaintiff alleges that the Defendants denied him proper medical care, but he has failed to establish that any conduct of the Defendants violated any federally protected right.

> **a.** **The Defendants Did Not Violate the Plaintiff's federally protected rights.**

There are no facts to support a claim against the Defendants for their failure to provide Plaintiff proper medical care.[3] In order to prevail under 42 U.S.C. § 1983 on this claim, Plaintiff must demonstrate that the Defendants were deliberately indifferent to a "serious" medical condition, such that any conduct by the Defendants constituted an Eighth Amendment violation. See Hudson v. McMillian, 503 U.S. 1, 9 (1992) ("Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'") (citing Estelle v. Gamble, 429 U.S. 97, 103-104 (1976)). In Estelle, the Supreme Court stated:

> [I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.' Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

429 U.S. at 105-06 (emphasis added). See also, Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("Deliberate indifference describes a state of mind more blameworthy than negligence."). Furthermore, where a prisoner has received medical attention and the dispute concerns the adequacy of the medical treatment, deliberate indifference is not shown. Hamm v. DeKalb County, 774 F.2d 1567 (11th Cir. 1985).

---

[3] This is particularly true with respect to Deputies Shelton, Stokes and Redman. Neither deputy had any duties with respect to providing medical care to inmates in the jail. (Shelton aff. ¶ 4; Stokes dec. ¶ 4; Redman aff. ¶ 4.)

### (1)    Headaches and Dizziness

In the instant case, Plaintiff has not shown that his headaches and dizziness are a serious medical condition.  Furthermore, Plaintiff was taken to see Dr. Cochran immediately upon his request for medical attention, who concluded that Plaintiff's headaches and dizziness were a result of muscle-tension headaches.  Dr. Cochran prescribed Plaintiff a medication for those headaches, which was administered to Plaintiff at the jail.  Plaintiff was taken to see Dr. Cochran a second time for his headaches and dizziness, but Dr. Cochran refused to treat him further because of Plaintiff was combative and verbally abusive.  Plaintiff was then taken to another doctor, Dr. Roberts, the following month, and was prescribed medication and a CT scan, all of which was provided to the plaintiff.  Such attention to Plaintiff's injuries cannot be reasonably construed as indifference that offends the "evolving standards of decency" in violation of the Eighth Amendment.

Clearly Plaintiff's claims are not for a denial of medical care, but rather for his satisfaction with the medical care he received.  However, an inmate does not have a right to a *specific* kind of treatment.  City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; *how [a municipality] obtains such treatment is not a federal constitutional question*.") (emphasis added).  Additionally, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated Plaintiff.  See Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although plaintiff may have desired different modes of treatment, care provided by jail did not constitute

deliberate indifference), <u>cert. denied</u>, 475 U.S. 1096 (1986); <u>Westlake v. Lucas</u>, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments").

Furthermore, the Defendants do not have any kind of medical education, training or experience. (Moates dec. ¶ 11; Ennis dec. ¶ 11.) They rely upon the professional judgment of medical professionals who have been retained to provide care to the inmates. In <u>Williams v. Limestone County</u>, 198 F.Appx. 893 (11th Cir. 2006), the Eleventh Circuit had addressed in an unpublished opinion the issue of whether an inmate may maintain a medical claim under the auspices of § 1983 against prison officials with no medical background. In <u>Williams</u>, the Eleventh Circuit held that a Sheriff was not liable for failure to train his employees in emergency medical procedures. In so holding, the Court noted:

> [W]e cannot say, on this record, that "the need for more or different training [was] obvious," such that by failing to ensure jail personnel were trained in emergency medical procedures, Sheriff Blakely disregarded a substantial risk that the jail staff would be deliberately indifferent to inmates' medical needs ….
>
> [T]here is no indication from the record that Sheriff Blakely had notice his policies, training procedures, or supervision were "likely to result in the violation of a constitutional right." ….
>
> [S]upervisory officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care. <u>See, e.g.</u>, <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 69 (3d Cir.1993); <u>White v. Farrier</u>, 849 F.2d 322, 327 (8th Cir.1988). In this case, Sheriff Blakely promulgated general procedures for dealing with emergency situations, which procedures relied primarily on the medical expertise Naphcare was obligated by contract to provide …. "[D]eliberate indifference is a stringent standard of fault, requiring proof that [the] actor disregarded a known or obvious consequence of his action." <u>Bd. of County Comm'rs v. Brown</u>, 520 U.S. 397, 117 S. Ct. 1382, 1391, [] (1997). <u>See also</u> <u>Adams v. Poag</u>, 61 F.3d 1537, 1543 (11th Cir. 1995). Williams [the plaintiff], as the district court concluded, thus failed to meet his burden on summary judgment of establishing that Sheriff Blakely's failure to train jail personnel amounted to deliberate indifference to Williams' serious medical condition.

198 Fed.Appx. at 897-898.

The Eighth Circuit has also addressed whether a Sheriff's staff may be held liable for claims of deliberate indifference to a medical condition when medical treatment is provided. In Meloy v. Bachmeier, 302 F.3d 845 (8th Cir. 2002), a former inmate sued several prison doctors, a nurse, and the prison's medical director[4] for failing to provide him with a positive air pressure machine needed to treat his sleep apnea. 302 F.3d at 847. Reversing the district court's denial of summary judgment for the director, the Eighth Circuit began by making some common sense observations. "A prison's medical treatment director who lacks medical expertise cannot be liable for the medical staff's diagnostic decisions." 302 F.3d at 847 citing, Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995). Further, the Meloy court stated "[p]rison officials cannot substitute their judgment for a medical professional's prescription." Id. citing, Zentmyer v. Kendall County, 220 F.3d 805, 812 (7th Cir. 2000). Finally, the court held:

> The law does not clearly require an administrator with less medical training to second-guess or disregard a treating physician's treatment decision. Because the law was not clearly established that [the director] was deliberately indifferent to [the plaintiff's] serious medical needs, [the director] is entitled to qualified immunity.

302 F.3d at 849.

In the instant case, the evidence shows that Plaintiff was treated by Dr. Cochran and Dr. Roberts, both medical doctors, for Plaintiff's medical concerns regarding his headaches and dizziness. The Defendants, who are not trained and licensed medical providers, are in no way responsible for second-guessing the judgments of these medical doctors.

### (2)    Tuberculosis

There are no facts to support Plaintiff's deliberate indifference claim as to his purported contraction of TB. Although TB is a serious medical condition, it is only serious to the extent that a person has contracted it. As set forth in the facts, Plaintiff **did not contract TB**.

---

[4] The medical director was a trained and licensed nurse. 302 F.3d at 846.

Additionally, as discussed above, the inmate from whom Plaintiff alleges he contracted TB was not at the jail during the period Plaintiff was exposed to TB.

The Defendants have provided Plaintiff with treatment for his exposure to TB. They followed all the advice and recommendations of the medical professionals at the Health Department regarding the treatment and containment of TB.[5]  Plaintiff was provided prompt diagnosis and treatment through the Health Department, and he was provided all the preventative medications. As a result, even though Plaintiff was exposed to TB at some point (possibly before his incarceration), he never contracted it. Despite Plaintiff's allegations, the Defendants were not obliged to separate inmates with TB, so long as those inmates are actively taking their TB medication. (Roberts dec. ¶ 15.) Here, both Plaintiff and the inmate from whom Plaintiff mistakenly believes he contracted TB were provided TB medication throughout their incarceration. As noted above, the Defendants are not required to second-guess the recommendations of the TB professionals at the Health Department regarding the treatment and containment of TB.

**b.      No clearly established law provided "fair warning".**

The Plaintiff must show that clearly established law provided these Defendants with fair warning that their conduct was unlawful by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the total absence of case law. Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted). The Eleventh Circuit has identified the latter method as an "obvious clarity" case. Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted). In order to

---

[5] If these Defendants had not followed the advice and recommendations of the medical professionals regarding the treatment and spread of TB, they not only would endanger other inmates, but they would also endanger themselves and their staff, all of whom have day-to-day interaction with these inmates.

show that the conduct of the Defendants was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent." Willingham, 321 F.3d at 1301. "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

### (1)    Headaches and Dizziness

Neither the United States Supreme Court, nor the Eleventh Circuit, nor the Alabama Supreme Court has held that a Sheriff or a jail administrator is liable under 42 U.S.C. § 1983 for deliberate indifference to an inmate's medical needs when the inmate was provided medical treatment by two different doctors on three different occasions. As noted above, an inmate does not have a right to a specific kind of treatment. No cases in this Circuit have held a Sheriff or Jail Administrator liable for deliberate indifference where an inmate has received medical treatment on multiple occasions for injuries that were not serious. Given the Eleventh Circuit's holding in William, the Plaintiff cannot show a materially similar case or that this is an obvious clarity case. 198 Fed.Appx. at 897-898.

### (2)    Tuberculosis

Likewise, as to Plaintiff's claims for deliberate indifference to his exposure to TB, neither the United States Supreme Court, nor the Eleventh Circuit, nor the Alabama Supreme Court has held that a Sheriff or a jail administrator is liable for deliberate indifference liable on a theory of deliberate indifference for an inmate's exposure to a communicable disease, such as TB, in the jail when the sheriff and jail administrator followed all the recommendations of the medical professionals for treatment and containment of that communicable disease.

To the extent that case law of this Circuit provides any guidance as to the constitutionality of the Defendants' actions, it merely provides notice that the Eighth

Amendment requires a remedy for exposing inmates to contagious diseases, even though the inmates never contracted any disease. See Farmer, 511 U.S. at 844 ("the Eighth Amendment requires a remedy for exposure of inmates to 'infectious maladies' such as hepatitis and venereal disease 'even though the possible infection might not affect all of those exposed.'") (quoting Helling v. McKinney, 509 U.S. 25, 33 (1993)); see also Hutto v. Finney, 437 U.S. 678, 682-83 (1978) (finding an Eighth Amendment violation where "the prisoners were given mattresses to spread on the floor. Although some prisoners suffered from infectious diseases such as hepatitis and venereal disease, mattresses were removed and jumbled together each morning, then returned to the cells at random in the evening."). Eleventh Circuit precedent also recognizes that the careless treatment of contagious diseases implicates the Eighth Amendment. See Gates v. Collier, 501 F.2d 1291, 1300 (5th Cir. 1974) (noting in the context of an Eighth Amendment analysis, "Facilities for the disposal of human waste at all camps present an immediate health hazard; contamination of the prison water supply caused by inadequate sewage has led to the spread of infectious diseases.");[6] Marsh v. Butler County, 268 F.3d 1014, 1034 (11th Cir. 2001) (citing Collier with approval). However, no case law from this Circuit has ever held jail officials liable for an inmate's contraction of a contagious disease. See, e.g., Harris v. Thigpen, 941 F.2d 1495, 1508 (11th Cir. 1991) (holding that DOC was not liable for deliberate indifference to treatment of contagious diseases, even though "the lack of knowledge of certain primary care physicians at Limestone and Tutwiler relating to some seemingly basic terminology about the diagnosis, prophylaxis, monitoring, and treatment of HIV infection is disturbing.").

Defendants Ennis and Moates certainly were not careless in their treatment of Plaintiff's TB, nor were they careless in their effort to contain any potential outbreak. The medical advice

---

[6] Fifth Circuit decisions that predate the creation of the Eleventh Circuit are binding on the Eleventh Circuit, until overruled by that Court en banc. Bonner v. City of Prichard, 661 F.2d 1206, 1210 (11th Cir. 1981) ("The decisions of the former Fifth Circuit, adopted as precedent by the Eleventh Circuit, will, of course, be subject to the power of the Eleventh Circuit sitting en banc to overrule any such decision.").

they received did not require segregation of exposed inmates.  As discussed above, both Plaintiff

and Mr. Cooper received immediate medical attention for their purported exposure to TB.  Both

Plaintiff and Mr. Cooper received the preventative TB medications as prescribed by the Health

Department.  The circumstances Plaintiff alleges in his Amended Complaint are a far cry from

those present in <u>Hutto</u> or <u>Gates</u>.  The Defendants, here, followed all the recommendations of the

medical professionals for treatment and containment of that communicable disease.  Therefore,

Defendant Ennis and Defendant Moates, to the extent that the Amended Complaint states a claim

against them, cannot be deemed to have violated Plaintiff's "clearly established" rights under the

existing caselaw as to Plaintiff's claim for denial of medical care for his exposure to TB.

### C. There is no *Respondeat Superior* Liability under 42 U.S.C. § 1983.

To the extent that Plaintiff's claims against the Defendants are an attempt to hold them

liable under a *respondeat superior* theory, they must fail.  Neither the express language of § 1983

nor the holdings of the United States Supreme Court support liability on this basis.

42 U.S.C. § 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, ***subjects, or causes to
> be subjected***, any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress . . . .

(Emphasis added.)  The language of the statute requires that there be a direct causal link between

Plaintiff and the actions of a putative defendant.  Merely employing an individual who causes

harm is insufficient to invoke the remedy of this statute.

The United States Supreme Court addressed this exact issue and adopted this holding

nearly 30 years ago.  <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 98 S. Ct. 2018 (1978).  In

<u>Monell</u>, the Court cited § 1983 and held, "a municipality cannot be held liable under § 1983 on a

<u>respondeat superior</u> theory."  436 U.S. at 691.  Accordingly, as both the explicit text of § 1983

and the opinions of the United States Supreme Court forbid vicarious liability, Plaintiff's respondeat superior claims fail.

### D.    The Plaintiff Has Failed to State a Valid Intentional Infliction of Emotional Distress Claim Under Alabama Law.

Even if the Defendants were not otherwise entitled to absolute immunity, the Plaintiff's intentional infliction of emotional distress claim fails as a matter of law.[7]  Under Alabama law, a plaintiff claiming outrage must allege and prove three elements: (1) intentional or reckless conduct on the part of the defendant; (2) extreme and outrageous conduct; and (3) emotional distress that is so severe that no "reasonable person could be expected to endure it."  Ex parte Crawford & Co., 693 So. 2d 458, 460 (Ala. 1997).  The Plaintiff's burden under this standard is so high that the Alabama Supreme Court has only recognized three categories of misconduct sufficient to justify the tort of outrage: (1) mishandling of corpses; (2) "barbaric" practices employed by insurance agents to obtain settlement; and (3) "egregious sexual harassment."  Id. at 460 n.1 (citations omitted).

The facts supporting the Plaintiff's outrage claim do not fall into any of the three recognized types of outrage claims.  Moreover, it is difficult to see how the Defendants' use of force on rioting inmates *other* than the Defendant could cause him any distress, let alone distress that no reasonable person could be expected to bear.  Accordingly, the Defendants are entitled to judgment in their favor as a matter of law on the Plaintiff's intentional infliction of emotional distress claim.

### E.    Summary Judgment Standard

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant.  Greason v. Kemp, 891 F.2d 829, 831 (11th Cir. 1990).  However, a

---

[7] Under Alabama law, intentional infliction of emotional distress and outrage are the same tort.  Stewart v. Matthews Industries, Inc., 644 So.2d 915, 918 (Ala. 1994).

plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" Reeves, 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299.[8] "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'" Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc) quoting Massachusetts School of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998).

## CONCLUSION

These Defendants deny each and every allegation made by Plaintiff, Derek Dede, in the Amended Complaint. Defendant Ennis has not acted in a manner so as to deprive Plaintiff of any right to which he is entitled, nor has Defendant Moates, to the extent that a claim is stated against him in the Amended Complaint, acted to deprive the Plaintiff of any federal right.

## MOTION FOR SUMMARY JUDGMENT

The Defendants respectfully request that this Honorable Court treat their Special Report as a Motion for Summary Judgment, and grant unto them the same.

---

[8] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Respectfully submitted this 17th day of March, 2008.

> **s/Gary L. Willford, Jr.**
> GARY L. WILLFORD, JR., Bar Number: WIL198
> JOSEPH L. HUBBARD, JR., Bar Number HUB015
> Attorneys for Defendants
> WEBB & ELEY, P.C.
> 7475 Halcyon Pointe Drive (36117)
> Post Office Box 240909
> Montgomery, Alabama  36124
> Telephone:  (334) 262-1850
> Fax:  (334) 262-1889
> E-mail:  gwillford@webbeley.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 17th day of March, 2008, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that I have mailed a true and correct copy of the foregoing by United States Mail, postage prepaid, to the following non-CM/ECF participant:

> Derek Dede, AIS #253851
> Easterling Correctional Facility
> 200 Wallace Drive
> Clio, AL  36017

> **s/Gary L. Willford, Jr.**
> OF COUNSEL

# EXHIBIT A

**Inmate File of Derek Dede, Intake Sheet**

**ENTERPRISE POLICE DEPARTMENT**
TRANSPORT SHEET (Coffee County Jail)

DATE____11-17-2005____,_____     TIME____1913____ AM (PM)

STATUS          STATE_____     FEDERAL_____
                CITY_____     COUNTY _X_
                                    (List Division if Coffee)

NAME____DEDE_____DEREK_____JOHN____
            LAST              FIRST              MIDDLE

ADDRESS_103 SNERLIN STREET___ CITY _ENTERPRISE___ ZIP _36330_

POB _NEW ORLEANS, LA, ORELIA PARISH_ SSN_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_ LICENSE _AL 7523568_

AGE_33_ SEX _M_ RACE _B_ WEIGHT _140_ HEIGHT _5'8"_

HAIR _BLK_ EYES _BRO_     DOB_08/17/1972_

ARRESTED? YES _X_ NO____     ARRESTING AGENCY _ENTERPRISE POLICE DEPARTMENT_

TYPE OF ARREST     WARRANT _X_  CALL_____  ON-VIEW_____

ARRESTING OFFICER _INV. CHRIS HAWLEY_     LOCATION _307 SANDERS STREET ENTER._

OFFENSE(S) _ROBBERY 1ST DEGREE_     MISDEMEANOR____ FELONY _X_
_____     MISDEMAENOR____ FELONY____
_____     MISDEMEANOR____ FELONY____

TRANSFERRED FROM_____ | HOLD FOR (agency)_____

RELAESE INFORMATION _NO BOND TO BE SET BY DISTRICT JUDGE !  NO BOND !
NO BOND TO BE SET BY JUDGE !_

SENTENCING INFORMATION _NO BOND TO BE SET BY JUDGE !  NO BOND
NO BOND TO SET SET BY JUDGE_

COMMENTS _CLASS A FELONY !_

COMPLETED BY_INV. CHRIS HAWLEY_          BOOKED BY_____
                        SEARCHED    _X_     PHOTO _X_
                        FINGERPRINTS _X_     GREEN CARD _X_

Enterprise P.D. Form 96-040



# EXHIBIT B

**Declaration of Ben Moates**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DEREK DEDE, #253851, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  1:07-CV-929-WKW |
| | ) | |
| SHERIFF BEN MOATES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

DECLARATION OF BEN MOATES
PURSUANT TO 28 U.S.C. § 1746

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | ) |
| COUNTY OF COFFEE | ) |

1.    My name is Ben Moates. I am over the age of nineteen and competent to make this affidavit. I served as Sheriff of Coffee County from January, 1995, to January, 2007. Before that time I was the Chief Deputy for Coffee County Sheriff's Department starting in 1991. I have been a sworn deputy since 1990. I have been a reserve Deputy since 1984. I now serve part-time as a lieutenant for the New Brockton Police Department.

2.    I have read the Complaint filed in this matter.

3.    It was the policy of the Coffee County Sheriff's Department to perform a medical screening on each inmate during the booking process. The screening included questions about tuberculosis (TB) and possible exposure to TB. Each inmate was given the medical screening before being assigned to their housing unit.

4.    I am aware that Derek Dede alleges that during his incarceration in the Coffee County Jail, he did not receive adequate medical treatment for his dizzy spells and headaches.

5.    The policy of the Coffee County Jail was to conduct sick call each morning. Inmates were made aware of this procedure through the Inmate Rules and Regulations they received at intake.    To not provide an inmate with necessary medical care would be a violation of the policies I established for the jail.

6.    To my knowledge, Mr. Dede received medical treatment in response to his complaints about dizzy spells and headaches.

7.    I am aware that in his Amended Complaint, Derek Dede alleges that during his incarceration in the Coffee County Jail, he contracted tuberculosis from another inmate, Dennis Cooper.

8.    On November 28, 2006, Dennis Cooper, was incarcerated in the Coffee County Jail.  On May 16, 2007, Mr. Cooper was transferred to Kilby Correctional Facility.

9.    It was the policy of the Coffee County Jail to have TB skin tests performed by the Health Department on inmates who may have been exposed to TB.  If the test comes back positive for exposure, the inmate is then provided with any necessary testing or treatment prescribed by the Health Department.

10.    Mr. Dede was provided with all necessary testing or treatment prescribed by the Health Department in response to his concerns about exposure to TB.  As a matter of policy, we followed all protocols and treatment regimens as established by the Health Department.

11.    I am not a medical professional.

12.    I was not in office and had no involvement whatsoever in the March 2007 incident complained of by the Plaintiff in which TASERs and shotguns were allegedly used in the jail.

13.    I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this declaration, and that the above statements were made by drawing from my personal knowledge of the situation.

Executed on this the _11th_ day of March, 2008.

_Ben Moates_
BEN MOATES

# EXHIBIT C

**Declaration of Zack Ennis**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DEREK DEDE, #253851, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:07-CV-929-WKW |
| | ) | |
| SHERIFF BEN MOATES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

DECLARATION OF ZACK ENNIS
PURSUANT TO 28 U.S.C. § 1746

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | ) |
| COUNTY OF COFFEE | ) |

1.  My name is Zack Ennis. I am over the age of nineteen and competent to make this declaration. I served as the Jail Administrator for the Coffee County Jail from 1983 to June 12, 2006.

2.  I have read the Complaint filed in this matter.

3.  I am familiar with Derek Dede as he has frequently been incarcerated in the Coffee County Jail. Mr. Dede was housed in cellblock 2 throughout his most recent incarceration in the Coffee County Jail from November 17, 2005 at least until the end of my service at the jail.

4.  I am aware that in his Complaint, Derek Dede alleges that during his incarceration in the Coffee County Jail, he did not receive adequate medical treatment for his dizzy spells and headaches.

5.  The policy of the Coffee County Jail was to conduct sick call each morning. Inmates were made aware of this procedure through the Inmate Rules and Regulations they

received at intake. To not provide an inmate with necessary medical care would be a violation of the policy of the Jail.

6.     To my knowledge, Mr. Dede received medical treatment in response to his complaints about dizzy spells and headaches.

7.     I am aware that Derek Dede alleges that he was exposed to tuberculosis (TB) while he was incarcerated in the Coffee County Jail. I have no personal knowledge of whether Mr. Dede had any interaction with Dennis Cooper while they were incarcerated in the Coffee County Jail, because I was no longer working at the Jail when Dennis Cooper arrived on November 17, 2006.

8.     Other than what I have read in Mr. Dede's inmate file, I have no personal knowledge of what testing or treatment Mr. Dede received from the Health Department in response to his concerns about exposure to TB.

9.     As the Jail Administrator for the Coffee County Jail, I was responsible for the day-to-day operation of the jail for Sheriff Ben Moates. I am familiar with the policies and procedures governing the operation of the Coffee County Jail at that time.

10.    It was the policy of the Coffee County Sheriff's Department to perform a medical screening on each inmate during the booking process. The screening included questions about TB and possible exposure to TB. Each inmate was given the medical screening before being assigned to their housing unit.

11.    I am not a medical professional.

12.    I was not employed at the Coffee County Jail in any capacity in March 2007, and had no involvement whatsoever in the incident the Plaintiff complains of regarding officers using TASERs and shotguns in the jail.

13.    I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this declaration, and that the above statements were made by drawing from my personal knowledge of the situation.

Executed on this the ___/2___ day of March, 2008.

_____
ZACK ENNIS

3

# EXHIBIT D

**Declaration of Stanley Roberts**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

DEREK DEDE,                              )
                                        )
          Plaintiff,                    )
                                        )
v.                                      )          Civil Action No. 1:07-cv-344-MEF
                                        )
SHERIFF BEN MOATES, et al.,·            )
                                        )
          Defendants.                   )

<u>DECLARATION OF STANLEY GUY ROBERTS
PURSUANT TO 28 U.S.C. § 1746</u>

STATE OF ALABAMA          )
                          )
COUNTY OF COFFEE          )

  1.  My name is Stanley Guy Roberts. I am over the age of nineteen and competent to make this declaration. I served as a corrections officer for the Coffee County Jail from 1999 to present.

  2.  I am familiar with Derek Dede as he has frequently been incarcerated in the Coffee County Jail. Mr. Dede was housed in cellblock 2 throughout his most recent incarceration in the Coffee County Jail from November 17, 2005 to present.

  3.  I am aware that in his Amended Complaint, Derek Dede alleges that during his incarceration in the Coffee County Jail, he did not receive adequate medical treatment for his dizzy spells and headaches.

  4.  Plaintiff first complained about his alleged headaches and dizzy spells in an inmate grievance form on May 3, 2006.

  5.  On June 7, 2006, Plaintiff was transported to Dr. Cochran for his complaints of dizzy spells and headaches.

6.    Dr. Cochran prescribed Norgesic Forte for the Plaintiff's headaches. Plaintiff was provided this medication.

7.    On September 1, 2006, Plaintiff was again transported to Dr. Cochran.

8.    On October 5, 2006, Plaintiff was transported to Elba General Hospital to see Dr. Roberts.

9.    Dr. Roberts prescribed Keflex for the Plaintiff's headaches. Plaintiff was provided that medication. Dr. Roberts also scheduled Plaintiff for a CT scan of his head.

10.    On October 6, 2006, Plaintiff was transported to the Elba General Hospital for a CT scan. I received no further instructions from Dr. Roberts regarding Plaintiff's medical care.

11.    I am aware that in his Amended Complaint, Derek Dede alleges that during his incarceration in the Coffee County Jail, he contracted Tuberculosis (TB) from another inmate, Dennis Cooper.

12.    On November 28, 2006, Dennis Cooper, was incarcerated in the Coffee County Jail. On May 16, 2007, Mr. Cooper was transferred to Kilby Correctional Facility.

13.    Upon his arrival at the jail, Mr. Cooper listed on his inmate medical screening sheet that he had Tuberculosis (TB).

14.    During Mr. Cooper's entire stay at the Coffee County Jail, Mr. Cooper was provided INH, vitamin B-6, a vitamin and a medication used in combination to treat TB, both of which were issued by the Health Department. Dr. A. Preyear prescribed this medication for Mr. Cooper to treat him for exposure to TB. Dr. Preyear's opinion advised that Mr. Cooper could mix with the general population so long as he was on this medication.

15.    On July 26, 2006, four months before Mr. Cooper came to the jail, Mr. Dede was examined by a Health Department official in the Coffee County Jail for TB. Mr. Dede tested positive for exposure to TB.

2

16.    On August 11, 2006, Mr. Dede received a chest X-ray to determine whether he had contracted TB. The TB nurse from the Health Department confirmed that Mr. Dede's X-ray came back negative for contraction of TB.

17.    It is my understanding that the Health Department prescribes an inmate TB medication as a preventative measure once that inmate tests positive for exposure to TB.

18.    In August, 2006, the Health Department prescribed Mr. Dede INH and vitamin B-6 to prevent and treat his exposure to TB. This medication was administered to the Plaintiff.

19.    I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this declaration, and that the above statements were made by drawing from my personal knowledge of the situation.

Executed on this the  28  day of June, 2007.


STANLEY GUY ROBERTS

3

# EXHIBIT E

**Inmate File, Grievance Response dated 8/23/06**

Coffee County Jail
Ben Moates, Sheriff
Ruth Scheipe, Administrator

**Grievance Response**

Date of Grievance: 08/23/2006

Inmate Complainant: ~~Antonio Jones~~    *Derek Wade*

Date of Response: 08/23/2006

**Response:** About 1230 hrs this date I spoke to the TB Nurse from the Health Dept., Ms. Simmons. She assured me that all of the X-rays taken were normal. She also advised that she was bringing the medication the first part of next week and that she would take sputum tests from you since you seemed concerned about your health. She will take blood at the time she brings the meds. The meds can't be dispensed until the lab work on the blood work is back.

Your other issue has already been addressed by me to you to the very best of my ability.

On a personal note, it certainly didn't take long for you to change from the person you presented yourself as into the person you seem to be now, I am really sorry about that.

*Ruth Scheipe*
Ruth Scheipe
Jail Administrator

# EXHIBIT F

**Inmate File, Medication Records for INH**

＠Ｃ Ｏ Ｐ Ｙ

**COFFEE COUNTY JAIL**

**ACA STANDARD FORM 2-2133**

**MEDICATION SHEET**

| FEDERAL: | STATE: | COUNTY: | CITY: |
|---|---|---|---|

NAME: Derek Dede —

MEDICATION: INH 300 ug

RX INSTRUCTIONS: 1 tab (1/day @ 0850
Bath ???

CELLBLOCK Z

Request to Be given at 1200
only if all 3 other
Taking that med

Donta Fields + Gregory Goldsmith
as well.

| DATE | YR | TIME ISSUED | AMOUNT ISSUED | INMATE'S SIGNATURE | ISSUING OFFICER'S SIGNATURE | MED PKG MADE BY |
|---|---|---|---|---|---|---|
| 9-14 | 2006 | 0850 | 1 tab | Derek Dede | C. Mitchell | S— |
| 9-15 | 2006 | 0850 | 1 tab | Derek Dede | R. Col | S |
| 9-16 | 2006 | 0850 | 1 tab | Derek Dede | H. Williams | S |
| 9-17 | 2006 | 0850 | 1 tab | Derek Dede | R. Miller | OLM |
| 9-18 | 2006 | 0850 | 1 tab | Derek Dede | R.M. | S |
| 9-19 | 2006 | 0850 | 1 tab | Derek Dede | M. Real | W |
| 9-20 | 2006 | 0500 | 1 tab | Derek Dede | M. Real | W |
| 9-21 | 2006 | 0500 | 1 tab | Derek Dede | H. Williams | W |
| 9-22 | 2006 | 0850 | 1 Tab | Derek Dede | H. Williams | tdm |
| | 2006 | | | | | |
| | 2006 | | | | | |
| | 2006 | | | | | |
| | 2006 | | | | | |
| | 2006 | | | | | |
| | 2006 | | | | | |
| | 2006 | | | | | |
| | 2006 | | | | | |
| | 2006 | | | | | |
| | 2006 | | | | | |
| | 2006 | | | | | |

DATE IN FOR REFILL _____     DATE REFILLED _____     DATE MED OUT w/NO REFILL _____

COPY

**COFFEE COUNTY JAIL**

**ACA STANDARD FORM 2-2133**

**MEDICATION SHEET**

| NAME: | Derek Dee | FEDERAL: | |
| MEDICATION: | Taft 300 mg | STATE: | |
| R/INSTRUCTIONS: | Take 1 Tablet X a Day @ 0530 | COUNTY: | |
| | Before | CITY: | |

CELLBLOCK 2   17

| DATE | YR | TIME ISSUED | AMOUNT ISSUED | INMATE'S SIGNATURE | ISSUING OFFICER'S SIGNATURE | MED PKG MADE BY |
|---|---|---|---|---|---|---|
| 2-22 | 2006 | 0530 | tab | Derek Dede | | |
| 2-23 | 2006 | 0530 | tab | Derek Dede | | |
| 2-24 | 2006 | 0530 | tab | Derek Dede | | |
| 2-25 | 2006 | 0530 | tab | Derek Dede | | |
| 2-26 | 2006 | 0500 | tab | Derek Dede | | |
| 2-27 | 2006 | 0500 | tab | Derek Dede | | |
| 2-28 | 2006 | 0530 | tab | Derek Dede | | |
| 2-29 | 2006 | 0530 | tab | | | |
| 2-30 | 2006 | 0530 | tab | | | |
| 3-1 | 2006 | 0530 | tab | | | |
| 3-2 | 2006 | 0530 | tab | | | |
| 3-3 | 2006 | 0500 | tab | | | |
| 3-4 | 2006 | 0500 | tab | | | |
| 3-5 | 2006 | 0530 | tab | | | |
| 3-6 | 2006 | 0530 | tab | | | |
| 3-7 | 2006 | 0530 | tab | | | |

DATE IN FOR REFILL _____   DATE REFILLED _____   DATE MED OUT w/NO REFILL _____

Case 1:07-cv-00929-WKW-SRW Document 48-2 Filed 03/13/2008 Page 20 of 36

C COPY

**COFFEE COUNTY JAIL**

ACA STANDARD FORM 2-2133

MEDICATION SHEET

| FEDERAL: | |
|---|---|
| STATE: | |
| COUNTY: | |
| CITY: | |

NAME: Derek Dedo
MEDICATION: Inth 300 mg
RX INSTRUCTIONS: 1 Tab 1X a day @ 0500

CELLBLOCK 2

Tablets will be oval + Round — 1's sore MED.

| DATE | YR | TIME ISSUED | AMOUNT ISSUED | INMATE'S SIGNATURE | ISSUING OFFICER'S SIGNATURE | MED PKG MADE BY |
|---|---|---|---|---|---|---|
| 10-8 | 2006 | 0500 | 1 Tab | Derek Dedo | | |
| 10-9 | 2006 | 0500 | 1 Tab | Derek Dedo | RCC | |
| 10-10 | 2006 | 0500 | 1 Tab | Derek Dedo | | MKC |
| 10-11 | 2006 | 0500 | 1 Tab | Derek Dedo | SW | MKC |
| 10-12 | 2006 | 0500 | 1 Tab | Derek Dedo | | SC |
| 10-13 | 2006 | 0500 | 1 Tab | Derek Dedo | | SC |
| 10-14 | 2006 | 0500 | 1 Tab | Derek Dedo | SH Williams | SW |
| 10-15 | 2006 | 0500 | 1 Tab | Derek Dedo | | |
| 10-16 | 2006 | 0500 | 1 Tab | Derek Dedo | | SC |
| 10-17 | 2006 | 0500 | 1 Tab | Derek Dedo | | SC |
| 10-18 | 2006 | 0500 | 1 Tab | Derek Dedo | SH Williams | SW |
| 10-19 | 2006 | 0500 | 1 Tab | Derek Dedo | SH Williams | SW |
| 10-20 | 2006 | 0500 | 1 Tab | Derek Dedo | SH Williams | SC |
| 10-21 | 2006 | 0500 | 1 Tab | Derek Dedo | SH Williams | SC |
| 10-22 | 2006 | 0500 | 1 Tab | Derek Dedo | SH Williams | SC |
| 10-23 | 2006 | 0500 | 1 Tab | Derek Dedo | | SC |

DATE IN FOR REFILL _____   DATE REFILLED _____   DATE MED OUT w/NO REFILL _____

**COPY**

| COFFEE COUNTY JAIL | FEDERAL: |
|---|---|
| ACA STANDARD FORM 2-2133 | STATE: |
| MEDICATION SHEET | COUNTY: |
| CELLBLOCK  2 | CITY: |

NAME: Derek Dale

MEDICATION: INH 300mg

RX INSTRUCTIONS: 1 tab 1 x day

Bottle

| DATE | YR | TIME ISSUED | AMOUNT ISSUED | INMATE'S SIGNATURE | ISSUING OFFICER'S SIGNATURE | MED PKG MADE BY |
|---|---|---|---|---|---|---|
| 10-24 | 2006 | 0500 | 1 tab | _Derek Dale_ | | ScO |
| 10-25 | 2006 | 0500 | 1 tab | Derek Dale | RKelley | ScO |
| 10-26 | 2006 | 0500 | 1 tab | | RKelley | ScO |
| 10-27 | 2006 | 0520 | 1 tab | D.D. | DWilliams | SO |
| 10-28 | 2006 | 0520 | 1 tab | P.D. | RWilliams | SO |
| 10-29 | 2006 | 0520 | 1 tab | D.D. | RWilliams | SO |
| 10-30 | 2006 | 0520 | 1 tab | D.D. | SWilliams | SO |
| 10-31 | 2006 | 0520 | 1 tab | D.D | SWilliams | SO |
| 11-01 | 2006 | 0520 | 1 tab | D.D | SWilliams | KW |
| 11-01 | 2006 | 0500 | 1 tab | D.D | Jmc | 11.0. |
| 11-2 | 2006 | 0520 | 1 tab | D D | EWilliams | SO |
| 11-2 | 2006 | 0520 | 1 tab | DD | EWilliams | SO |
| 11-4 | 2006 | 0520 | 1 tab | DD | EWilliams | SO |
| 11-5 | 2006 | 0520 | 1 tab | DD | E.Godby | SO |
| 11-6 | 2006 | 0520 | 1 tab | DD | EWilliams | SO |
| 11-07 | 2006 | 0500 | 1 tab | DD | Mr Cole | SO |
| 11-07 | 2006 | 0500 | 1 tab | | | |

DATE IN FOR REFILL _____

DATE REFILLED _____

DATE MED OUT w/NO REFILL _____

**[dc] COPY**

NAME: Derek Dede

MEDICATION: Nut 300 mg

RX INSTRUCTIONS: 1 tab 1xday @ 0500 1 tab 1x day @ 0500 Bottle

| | COFFEE COUNTY JAIL | FEDERAL: |
|---|---|---|
| | ACA STANDARD FORM 2-2133 | STATE: |
| | MEDICATION SHEET | COUNTY: |
| | CELLBLOCK 2 | CITY: |

| DATE | YR | TIME ISSUED | AMOUNT ISSUED | INMATE'S SIGNATURE | ISSUING OFFICER'S SIGNATURE | MED PKG MADE BY |
|---|---|---|---|---|---|---|
| 1-9 | 2006 | 0500 | 1 tab | D.D | R. Williams | IHS |
| 1-10 | 2006 | 0500 | 1 tab | D.D. | | IHS |
| 1-11 | 2006 | 0500 | 1 tab | DD | | IHS |
| 1-11 | 2006 | 0500 | 1 tab | BB | | IHS |
| 1-12 | 2006 | 0500 | 1 tab | BB | | IHS |
| 1-13 | 2006 | 0500 | 1 tab | BB | | |
| 1-14 | 2006 | 0500 | 1 tab | DD | | S.O |
| 1-15 | 2006 | 0500 | 1 tab | DD | | S.O |
| 1-16 | 2006 | 0500 | 1 tab | DD | | S.C |
| 1-16 | 2006 | 0500 | 1 tab | DD | Coleen | BW |
| 1-17 | 2006 | 0500 | 1 tab | D.D | R.Williams | S.C |
| 1-18 | 2006 | 0500 | 1 tab | D.D. | R.Williams | S.C |
| 1-19 | 2006 | 0500 | 1 tab | D.D | R.Williams | S.C |
| 1-20 | 2006 | 0500 | 1 tab | DD | R.Williams | S.O |
| 1-21 | 2006 | 0500 | 1 tab | D.D | Jmullins | S.O |
| 1-22 | 2006 | 0500 | 1 tab | DD | Jane Davis | S.C |
| 1-23 | 2006 | 0500 | 1 tab | DA | E.Edford | S.C |
| 1-24 | 2006 | 0500 | 1 tab | D.A | R.Williams | S.O |

DATE IN FOR REFILL _____

DATE REFILLED _____

DATE MED OUT W/NO REFILL _____

**COPY**

| | COFFEE COUNTY JAIL | FEDERAL: |
|---|---|---|
| | ACA STANDARD FORM 2-2133 | STATE: |
| | MEDICATION SHEET | COUNTY: |
| | CELLBLOCK  2 | CITY: |

NAME: _Mark Dede_

MEDICATION: _Tivit 300 mg_

/X INSTRUCTIONS: _1 tab 1 x a day @ 0500_

| DATE | YR | TIME ISSUED | AMOUNT ISSUED | INMATE'S SIGNATURE | ISSUING OFFICER'S SIGNATURE | MED PKG MADE BY |
|---|---|---|---|---|---|---|
| 1-25 | 2006 | 0500 | 1 tab | DO | R.C.O. | SL |
| 1-26 | 2006 | 0500 | 1 tab | DD | C.H.Lild | SL |
| 1-27 | 2006 | 0500 | 1 tab | out | B.Williams | SL |
| | 2006 | | | | | |
| | 2006 | | | | | |
| | 2006 | | | | | |
| | 2006 | | | | | |
| | 2006 | | | | | |
| | 2006 | | | | | |
| | 2006 | | | | | |
| | 2006 | | | | | |
| | 2006 | | | | | |
| | 2006 | | | | | |
| | 2006 | | | | | |
| | 2006 | | | | | |
| | 2006 | | | | | |
| | 2006 | | | | | |
| | 2006 | | | | | |
| | 2006 | | | | | |
| | 2006 | | | | | |

DATE IN FOR REFILL _____    DATE REFILLED _____    DATE MED OUT w/NO REFILL _____

# EXHIBIT G

**Inmate File, Medication Records for Vitamin B-6**

COPY

Bubbles 3

**NAME:** Derek Dere

**MEDICATION:** Vitamin B tab

**R/X INSTRUCTIONS:** 1 tab 1x/day @ 0500
BitB6

| | | COFFEE COUNTY JAIL | | FEDERAL: | |
|---|---|---|---|---|---|
| | | ACA STANDARD FORM 2-2133 | | STATE: | |
| | | MEDICATION SHEET | | COUNTY: | |
| | | CELLBLOCK 2 | | CITY: | |

| DATE | YR | TIME ISSUED | AMOUNT ISSUED | INMATE'S SIGNATURE | ISSUING OFFICER'S SIGNATURE | MED PKG MADE BY |
|---|---|---|---|---|---|---|
| 10-16 | 2006 | 0510 | 1 tab | Derek Dere | E.L.Well | SL |
| 10-17 | 2006 | 0510 | 1 tab | Derek Dere | JP | SL |
| 10-18 | 2006 | 0500 | 1 tab | Derek Dere | RD | SLG |
| 10-19 | 2006 | 0500 | 1 tab | Derek Dere | E Williams | SLG |
| 10-20 | 2006 | 0500 | 1 tab | Derek Dere | Kate | JW |
| 10-21 | 2006 | 0500 | 1 tab | Derek Dele | E.L.Well | SL |
| 10-22 | 2006 | 0510 | 1 tab | Derek Dele | E Williams | SL |
| 10-23 | 2006 | 0510 | 1 tab | Derek Dele | B.Cc | SL |
| 10-24 | 2006 | 0500 | 1 tab | Derek Dele | JP | SL |
| 10-25 | 2006 | 0510 | 1 tab | Derek Dule | JP | SO |
| 10-26 | 2006 | 0500 | 1 tab | D.D | S.L.Well | SL |
| 10-27 | 2006 | 0510 | 1 tab | D.D | E Williams | SL |
| 10-28 | 2006 | 0510 | 1 tab | D.D | RWi | SL |
| 10-29 | 2006 | 0510 | 1 tab | D.D | E.Well | SL |
| 10-30 | 2006 | 0500 | 1 tab | D.D | E Williams | SL |
| 10-31 | 2006 | 0500 | 1 tab | D.D | MJ | RW |

DATE IN FOR REFILL _____    DATE REFILLED _____    DATE MED OUT W/NO REFILL _____

COPY

17

| | | |
|---|---|---|
| COFFEE COUNTY JAIL. | FEDERAL: | |
| ACA STANDARD FORM 2-2133 | STATE: | |
| MEDICATION SHEET | COUNTY: | |
| CELLBLOCK 2 | CITY: | |

NAME: Derek Dede
MEDICATION: Vitamin B Tab
R/X INSTRUCTIONS: 1 tab 1 x a day
Bottle

| DATE | YR | TIME ISSUED | AMOUNT ISSUED | INMATE'S SIGNATURE | ISSUING OFFICER'S SIGNATURE | MED PKG MADE BY |
|---|---|---|---|---|---|---|
| 11-01 | 2006 | 0500 | 1 tab | D D | | moy |
| 11-2 | 2006 | 0500 | 1 tab | D D | | |
| 11-3 | 2006 | 0500 | 1 tab | D D | | |
| 11-4 | 2006 | 0500 | 1 tab | D D | | |
| 11-5 | 2006 | 0500 | 1 tab | D D | | |
| 11-6 | 2006 | 0500 | 1 tab | D D | | |
| 11-07 | 2006 | 0500 | 1 tab | D D | | |
| 11-09 | 2006 | 0500 | 1 tab | D D | | |
| 11-9 | 2006 | 0500 | 1 tab | D D | | |
| 11-10 | 2006 | 0500 | 1 tab | D D | | |
| 11-11 | 2006 | 0500 | 1 tab | D D | | |
| 11-12 | 2006 | 0500 | 1 tab | D D | | |
| 11-13 | 2006 | 0500 | 1 tab | D D | | |
| 11-14 | 2006 | 0500 | 1 tab | D D | | |
| 11-15 | 2006 | 0500 | 1 tab | | | |
| 11-16 | 2006 | 0700 | 1 tab | | | |

DATE IN FOR REFILL _____    DATE REFILLED _____    DATE MED OUT w/NO REFILL _____

**COPY**

COFFEE COUNTY JAIL — ACA STANDARD FORM 2-2133

**NAME:** Derek Wade
**MEDICATION:** Vitamin B Tab
**R/X INSTRUCTIONS:** 1 tab 1x/day

**FEDERAL:**    **STATE:**    **COUNTY:**    **CITY:**
MEDICATION SHEET    CELLBLOCK 2

| DATE | YR | TIME ISSUED | AMOUNT ISSUED | INMATE'S SIGNATURE | ISSUING OFFICER'S SIGNATURE | MED PKG MADE BY |
|---|---|---|---|---|---|---|
| 11-17 | 2006 | 0500 | 1 tab | D.D. | | |
| 11-18 | 2006 | 0500 | 1 tab | D.D. | | |
| 11-19 | 2006 | 0500 | 1 tab | D.D | | |
| 11-20 | 2006 | 0500 | 1 tab | D.D | | |
| 11-21 | 2006 | 0500 | 1 tab | D D | | |
| 11-22 | 2006 | 0500 | 1 tab | D D | | |
| 11-23 | 2006 | 0530 | | D.D | | |
| 11-24 | 2006 | 0530 | | D.D | | |
| 11-25 | 2006 | 0530 | | D.D | | |
| 11-26 | 2006 | 0530 | | D D | | |
| 11-27 | 2006 | 0530 | | out | | |
| | 2006 | | | | | |
| | 2006 | | | | | |
| | 2006 | | | | | |
| | 2006 | | | | | |
| | 2006 | | | | | |

DATE IN FOR REFILL _____  DATE REFILLED _____  DATE MED OUT w/NO REFILL _____

COPY

**NAME:** Derrick Dede

**MEDICATION:** B-6 Vitamin

**RX INSTRUCTIONS:** 1 tab 1X daily.

| COFFEE COUNTY JAIL | FEDERAL: |
| --- | --- |
| ACA STANDARD FORM 2-2133 | STATE: |
| MEDICATION SHEET | COUNTY: |
| CELLBLOCK   2 | CITY: |

| DATE | YR | TIME ISSUED | AMOUNT ISSUED | INMATE'S SIGNATURE | ISSUING OFFICER'S SIGNATURE | MED PKG MADE BY |
| --- | --- | --- | --- | --- | --- | --- |
| 11-27 | 2006 | 2200 | 1 Tab | D.D | KT | J.Carter |
| 11-28 | 2006 | 0500 | 1 tab | DD | A.Newsome | SCO |
| 11-29 | 2006 | 0500 | 1 tab | DD | R. Cole | SCO |
| 11-30 | 2006 | 0500 | 1 tab | DD | E. Melvin | SL |
| 12-1 | 2006 | 0500 | 1 tab | DD | | SL |
| 12-2 | 2006 | 0500 | 1 tab | DD | E. Melvin | SL |
| 12-3 | 2006 | 0500 | 1 tab | DD | E. Melvin | SL |
| 12-4 | 2006 | 0500 | 1 tab | DD | R. Cole | SL |
| 12-5 | 2006 | 0500 | 1 tab | DD | | SCO |
| 12-06 | 2006 | 0500 | 1 tab | SW | DJ Williams | SCO |
| 12-7 | 2006 | 0500 | 1 tab | DD | C. Nobles | SL |
| 12-8 | 2006 | 0500 | 1 tab | DD | C. Nobles | SL |
| 12-9 | 2006 | 0500 | 1 tab | DD | R. Pelt | SL |
| 12-10 | 2006 | 0500 | 1 tab | DD | R. Cole | SL |
| 12-11 | 2006 | 0500 | 1 tab | DD | DJ Williams | SL |
| 12-12 | 2006 | 0500 | 1 tab | DD | MK | SCO |

DATE IN FOR REFILL _____      DATE REFILLED _____      DATE MED OUT w/NO REFILL _____

COPY

| COFFEE COUNTY JAIL | FEDERAL: | |
|---|---|---|
| ACA STANDARD FORM 2-2133 | STATE: | |
| MEDICATION SHEET | COUNTY: | |
| CELLBLOCK 2 | CITY: | |

**NAME:** Dale Drasten

**MEDICATION:** B-12 Vitamin

**R/X INSTRUCTIONS:** 1 tab 1x day, Bottle

| DATE | YR | TIME ISSUED | AMOUNT ISSUED | INMATE'S SIGNATURE | ISSUING OFFICER'S SIGNATURE | MED PKG MADE BY |
|---|---|---|---|---|---|---|
| 12-13 | 2006 | 0500 | 1 tab | DD | MR | SCO |
| 12-14 | 2006 | 0500 | 1 tab | DB | J. Williams | Marcy |
| 12-15 | 2006 | 0500 | 1 tab | DD | N. Cole | M.B. |
| 12-16 | 2006 | 0500 | 1 tab | DD | J. Williams | SCO |
| 12-17 | 2006 | 0500 | 1 tab | DD | R. Cole | SL |
| 12-18 | 2006 | 0500 | 1 tab | DD | R. Cole | SL |
| 12-19 | 2006 | 0500 | 1 tab | DD | MR | SCO |
| 12-20 | 2006 | 0500 | 1 tab | DD | MR | SCO |
| 12-21 | 2006 | 0500 | 1 tab | DD | R. Cole | SL |
| 12-22 | 2006 | 0500 | 1 tab | DB | J. Williams | SL |
| 12-23 | 2006 | 0500 | 1 tab | DD | N. Cole | SL |
| 12-24 | 2006 | 0700 | 1 Tab | DD | J. Williams | JW |
| 12-25 | 2006 | 0500 | 1 Tab | DD | R. Cole | DD |
| 12-26 | 2006 | 0500 | 1 tab | M Williams | R. Cole | DD |
| 12-27 | 2006 | 0500 | 1 tab | SD | MR | SCO |
| 12-28 | 2006 | 0500 | 1 Tab | DD | J. Williams | SCO |

DATE IN FOR REFILL _____    DATE REFILLED _____    DATE MED OUT W/NO REFILL _____

**COPY**

| NAME: | Derrick Dodd | | | COFFEE COUNTY JAIL | FEDERAL: |
| MEDICATION: | B-6 Vitamin | | | ACA STANDARD FORM 2-2133 | STATE: |
| R/X INSTRUCTIONS: | 1 tab 1x/day | | | MEDICATION SHEET | COUNTY: |
| | Bottle | | | CELLBLOCK 2 | CITY: |

| DATE | YR | TIME ISSUED | AMOUNT ISSUED | INMATE'S SIGNATURE | ISSUING OFFICER'S SIGNATURE | MED PKG MADE BY |
|------|-----|-------------|---------------|---------------------|------------------------------|-----------------|
| 12-29 | 2006 | 0800 | 1 tab | D | | |
| 12-30 | 2006 | 0800 | 1 tab | D D | R Cole | |
| 12-3c | 2006 | 0800 | 1 tab | D D | B Williams | |
| | 2006 | | | | | |
| | 2006 | | | | | |
| | 2006 | | | | | |
| | 2006 | | | | | |
| | 2006 | | | | | |
| | 2006 | | | | | |
| | 2006 | | | | | |
| | 2006 | | | | | |
| | 2006 | | | | | |
| | 2006 | | | | | |
| | 2006 | | | | | |
| | 2006 | | | | | |
| | 2006 | | | | | |
| | 2006 | | | | | |
| | 2006 | | | | | |

DATE IN FOR REFILL _____    DATE REFILLED _____    DATE MED OUT w/NO REFILL _____

**COFFEE COUNTY JAIL**

**ACA STANDARD FORM 2-2133**

**MEDICATION SHEET**

NAME: Rosrick Dede

MEDICATION: B-6 Vitamins

R/X INSTRUCTIONS: 1 tab @ 0500    Bottle

| FEDERAL: | |
| STATE: | |
| COUNTY: | |
| CELLBLOCK | 2 |   CITY: |

| DATE | YR | TIME ISSUED | AMT. ISSUED | INMATE'S SIGNATURE | ISSUING OFFICER'S SIGNATURE | MED PKG MADE BY |
|---|---|---|---|---|---|---|
| 01-01 | 2007 | 0500 | 1 tab | DD | R. Cole | |
| 01-02 | 2007 | 0500 | 1 tab | DD | MC | |
| 01-03 | 2007 | 0500 | 1 tab | DD | | |
| 01-04 | 2007 | 0500 | 1 tab | DD | M. Williams | |
| 01-05 | 2007 | 0500 | 1 tab | DD | R. Cole | |
| 01-06 | 2007 | 0500 | 1 tab | DD | M. Williams | |
| 01-07 | 2007 | 0500 | 1 tab | DD | R. Cole | |
| 01-08 | 2007 | 0500 | 1 tab | DD | M. Williams | |
| 01-09 | 2007 | 0500 | 1 tab | DD | | |
| 01-10 | 2007 | 0500 | 1 tab | DD | | |
| 01-11 | 2007 | 0500 | 1 tab | DD | M. Williams | |
| 01-12 | 2007 | 0500 | 1 tab | DD | R. Cole | |
| 01-13 | 2007 | 0500 | 1 tab | DD | R. Cole | |
| 01-14 | 2007 | 0500 | 1 tab | DD | M. Williams | |
| 01-15 | 2007 | 0500 | 1 tab | DD | M. Williams | |
| 01-16 | 2007 | 0500 | 1 tab | DD | M. Williams | |

DATE IN FOR REFILL _____    DATE REFILLED _____    DATE MED OUT w/NO REFILL _____

NMH

**COPY**

NAME: Derrick Dede

MEDICATION: B-6 Vitamin

R/X INSTRUCTIONS: 1 tab 1 x a day    Bottle    17

COFFEE COUNTY JAIL

ACA STANDARD FORM 2-2133

MEDICATION SHEET

CELLBLOCK 2

FEDERAL:

STATE:

COUNTY:

CITY:

| DATE | YR | TIME ISSUED | AMT ISSUED | INMATE'S SIGNATURE | ISSUING OFFICER'S SIGNATURE | MED PKG MADE BY |
|---|---|---|---|---|---|---|
| 01-17 | 2007 | 0500 | 1 tab | DD | MB | M.B. |
| 01-18 | 2007 | 0500 | 1 tab | DD | RCe | |
| 01-19 | 2007 | 0500 | 1 tab | DD | TK | |
| 01-20 | 2007 | 0500 | 1 tab | DD | TK | |
| 01-21 | 2007 | 0500 | 1 tab | | RWilliams | |
| 01-22 | 2007 | 0500 | 1 tab | | RCe | |
| 01-23 | 2007 | 0500 | 1 tab | DD | Hartzsh | MB |
| 01-24 | 2007 | 0500 | 1 tab | DD | MB | |
| 01-25 | 2007 | 0500 | 1 tab | DD | RWilliams | |
| 01-26 | 2007 | 0500 | 2 tab | DD | RCe | |
| 01-27 | 2007 | 0500 | 1 tab | DD | RWilliams | |
| 01-28 | 2007 | 0500 | 1 tab | DD | RCe | |
| 01-29 | 2007 | 0500 | 1 tab | DD | RWilliams | |
| 01-30 | 2007 | 0500 | 1 tab | DD | MB | |
| 01-31 | 2007 | 0500 | 1 tab | DD | MB | |
| 02-01 | 2007 | 0500 | 1 tab | DD | RWilliams | |

DATE IN FOR REFILL _____    DATE REFILLED _____    DATE MED OUT w/NO REFILL _____

**COPY**

| | | |
|---|---|---|
| NAME: Derek DeDe. | | FEDERAL: |
| MEDICATION: Rele Vitamin | | STATE: |
| R/X INSTRUCTIONS: 1 Tab 1X A day | | COUNTY: |

COFFEE COUNTY JAIL

ACA STANDARD FORM 2-2133

MEDICATION SHEET

| | | |
|---|---|---|
| CELLBLOCK 2 | CITY: | |

Bottle

| DATE | YR | TIME ISSUED | AMT. ISSUED | INMATE'S SIGNATURE | ISSUING OFFICER'S SIGNATURE | MED PKG MADE BY |
|---|---|---|---|---|---|---|
| 2-18 | 2007 | 0500 | 1 Tab | DD | A Williams | HW |
| 2-19 | 2007 | 0500 | 1 Tab | DD | A Williams | HW |
| 2-20 | 2007 | 0500 | 1 Tab | DD | FT | FT |
| 2-21 | 2007 | 0500 | 1 Tab | DD | Adams | HW |
| 2-22 | 2007 | 0500 | 1 Tab | DD | Adams | HW |
| 2-23 | 2007 | 0500 | 1 Tab | DD | A Williams | HW |
| 2-24 | 2007 | 0500 | 1 Tab | DD | A Williams | HW |
| 2-25 | 2007 | 0500 | 1 Tab | DD | Money | HW |
| 2-26 | 2007 | 0500 | 1 Tab | DD | A Williams | HW |
| 2-27 | 2007 | 0500 | 1 Tab | DD | A Wright | FT |
| 2-28 | 2007 | 0500 | 1 Tab | | A Williams | FT |
| 3-01 | 2007 | 0500 | 1 Tab | DD | A Williams | HW |
| 3-02 | 2007 | 0500 | 1 Tab | DD | A Williams | DW |
| 3-3 | 2007 | 0500 | 1 Tab | DD | A Williams | HW |
| 3-4 | 2007 | 0500 | 1 Tab | DD | RR | RR |
| 3-5 | 2007 | 0500 | 1 Tab | DD | A Williams | DW |

DATE IN FOR REFILL _____    DATE REFILLED _____    DATE MED OUT w/NO REFILL _____

COPY

COFFEE COUNTY JAIL

| | | | | | |
|---|---|---|---|---|---|
| NAME: | Derek | DePe | | | FEDERAL: |
| MEDICATION: | B-6 . Vitamin | | | | STATE: |
| RX INSTRUCTIONS: | / Tab | x | A day | | COUNTY: |
| | Bottle | | | | CITY: |

ACA STANDARD FORM 2-2133

MEDICATION SHEET

CELLBLOCK  2

| DATE | YR | TIME ISSUED | AMT. ISSUED | INMATE'S SIGNATURE | ISSUING OFFICER'S SIGNATURE | MED PKG MADE BY |
|---|---|---|---|---|---|---|
| 3-6 | 2007 | 0500 | 1 Tab | DP | John Hall | EF |
| 3/7 | 2007 | 0500 | 1 Tab | DP | Irene Ocus | NJ/OCW |
| 3-8 | 2007 | 0500 | 1 Tab | DP | Williams | PW |
| 3-9 | 2007 | 0500 | 1 Tab | DP | Williams | PW |
| 3-10 | 2007 | 0500 | 1 Tab | DD | Weston | PW |
| 3-11 | 2007 | 0500 | 1 Tab | DD | Williams | PW |
| 3-12 | 2007 | 0500 | 1 Tab | DP | Williams | PW |
| 3-13 | 2007 | 0500 | 1 Tab | DP | Williams | PW |
| 3-13 | 2007 | 0500 | 1 Tab | DP | Jones | UJ/OCW |
| 3-14 | 2007 | 0500 | 1 Tab | DP | Jones | Irene |
| 3-15 | 2007 | 0500 | 1 Tab | DP | Williams | PW |
| 3-16 | 2007 | 0500 | 1 Tab | DP | Williams | PW |
| 3-17 | 2007 | 0500 | 1 Tab | DD | Williams | PW |
| 3-18 | 2007 | 0500 | 1 Tab | DD | Pedro | PW |
| 3-19 | 2007 | 0500 | 1 Tab | DT | Pedro | PW |
| 3-20 | 2007 | 0500 | 1 Tab | DD | mhifm | PW |
| 3-21 | 2007 | 0500 | 1 Tab | DD | | PW |

DATE IN FOR REFILL _____     DATE REFILLED _____     DATE MED OUT w/NO REFILL _____

**COPY**

NAME: _Derek DeDe_

MEDICATION: _B-6- Vitamin_

R/X INSTRUCTIONS: _1 Tab 1 X A day_
_Bottle_

COFFEE COUNTY JAIL

ACA STANDARD FORM 2-2133

MEDICATION SHEET

CELLBLOCK _2_

FEDERAL:

STATE:

COUNTY:

CITY:

| DATE | YR | TIME ISSUED | AMT. ISSUED | INMATE'S SIGNATURE | ISSUING OFFICER'S SIGNATURE | MED PKG MADE BY |
|---|---|---|---|---|---|---|
| _3-22_ | 2007 | _0500_ | _1 Tab_ | _DD_ | _J Williams_ | _See_ |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |

DATE IN FOR REFILL _____    DATE REFILLED _____    DATE MED OUT w/NO REFILL _____

(ç)ç COPY

**NAME:** Derek Dede

**MEDICATION:** B-6

**R/X INSTRUCTIONS:** 1 Time a day

| | | | | |
|---|---|---|---|---|
| COFFEE COUNTY JAIL | | | | FEDERAL: |
| ACA STANDARD FORM 2-2133 | | | | STATE: |
| | MEDICATION SHEET | | | COUNTY: |
| | | CELLBLOCK 2 | | CITY: |

| DATE | YR | TIME ISSUED | AMOUNT ISSUED | INMATE'S SIGNATURE | ISSUING OFFICER'S SIGNATURE | MED PKG MADE BY |
|---|---|---|---|---|---|---|
| 3/30 | 2007 | 1200 | 1 Tab | Dede Derek | M. West | Minger PCC |
| 3/31 | 2007 | 0500 | 1 Tab | Refused | R.Col | PCC |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |
| | 2007 | | | | | |

DATE FOR REFILL _____

DATE REFILLED _____

DATE MED OUT w/NO REFILL _____

# EXHIBIT H

**Affidavit of Richard Moss**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

DEREK DEDE, #253851,                    )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )  Civil Action No. 1:07-CV-929-WKW
                                        )
SHERIFF BEN MOATES, et al.,             )
                                        )
        Defendants.                     )

## AFFIDAVIT OF RICHARD B. MOSS

STATE OF ALABAMA          )
                          )
COUNTY OF COFFEE          )

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Richard B. Moss, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.      My name is Richard B. Moss.  I am over the age of nineteen and competent to make this affidavit.

2.      I the Jail Administrator of the Coffee County Jail.  I have served in this position since January 16, 2007.  Prior to becoming the Jail Administrator, I was a police officer with the Elba, Alabama Police Department for two years.  Prior to that I served as a police officer with the Town of River Falls, Alabama Police Department for approximately five years.  I have approximately eight years of law enforcement experience.

3.      I read the Plaintiff's complaints in this matter and have personal knowledge of some of the facts underlying the Plaintiff's claims.

1

4.    When Inmate Dennis Cooper entered the Coffee County Jail I was not the jail administrator. Mr. Cooper was still in the jail when I took office.

5.    When I became the administrator, I was made aware of an issue with several inmates, including Cooper, who had received a false positive for tuberculosis. These inmates had already been started on the preventative treatment by the Health Department for the positive reading. They continued to receive the medication until the treatment regimen was complete.

6.    To be clear, I never received information of an inmate with active tuberculosis being in the Coffee County Jail – including Dennis Cooper or the Plaintiff.

7.    It is the policy of the Coffee County Jail that inmates receive all necessary medical attention. It would be a violation of the policies of the Coffee County Jail to deprive an inmate of necessary medicines or medical treatment.

8.    At no time did I ever deprive the Plaintiff of medical treatment or direct others to deprive him of medical treatment.

9.    The Plaintiff received all treatment ordered by the physicians who treated him.

10.    On Saturday, March 3, 2007, a riot occurred in the Coffee County Jail. It is my understanding that the riot occurred because the inmates in Cell Block 2 were angry that they did not get a second smoke break prior to lock down.

11.    I first became aware of a problem at the jail when Jack Caradine, an off duty corrections officer, called me on my line while I was on my way home. As I had my children with me, I dropped them off at home, and then went immediately thereafter to the jail.

12.    By the time I arrived at the jail, the disturbance was over.

13.    I later learned that there were some inmates who received minor injuries from bean bag rounds, but the Plaintiff was not one of them.

2

14.    I went to Cell Block 2 where the riot had occurred. I stood in the middle of the day room area of the cell block and informed the cell block that their actions would not be tolerated. I informed them that no one would be mistreated.

15.    I then went to each cell and spoke to any inmate who would speak to me. I asked them individually about what had happened and asked them what they thought could have been done to prevent the situation.

16.    I next told the entire cell block that if they wanted to file a grievance, they should request a form and send it to me.

17.    It is the policy of the Coffee County Jail that an inmate with a grievance may request a grievance form from any corrections officer at any time. The grievance form can then be returned completed to any corrections officer. The corrections officers are tasked with the job of attempting to respond to the grievance if possible. If they cannot, the grievance is passed on to me.

18.    If I am unable to handle the grievance, we conduct a grievance hearing. The grievance/disciplinary committee consists of myself, Chief Deputy Ronnie Whitworth, and Deputy Neal Bradley.

19.    The Plaintiff submitted a complaint on a grievance form after the March 3, 2007 incident. However, the Plaintiff did not complain of any of the things contained in his Complaint in this case. He did not say that he had been injured or abused in any way by any member of the sheriff's department. He simply indicated that his sleep had been disturbed by our efforts to regain control of the jail.

20.    I reviewed the statements that were prepared by my corrections officers at Sheriff Sutton's direction regarding the incident. As a result of reviewing those statements, I came to the conclusion that the shift supervisor on duty at the time needed to be dismissed. The evidence

3

showed that when two other jailers were initially threatened by the inmates in Cell Block 2, the dismissed jailer used profanity towards the jailers and refused to open the cell block door to allow them to get away from the inmates. Sheriff Sutton later fired the shift supervisor.

21.    Attached to the Defendants' Special Report are true and correct copies of the Plaintiff's inmate and medical records. These records are prepared and kept in the regular course of business of the Coffee County Jail.

22.    I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this affidavit, and that the above statements were made by drawing from my personal knowledge of the situation.

Executed on this the _26_ day of February, 2008.

_Richard B. Moss_
Richard B. Moss

**SWORN TO** and **SUBSCRIBED** before me this _26ᵃ_ day of February, 2008.

_Eva McBride Fae_
NOTARY PUBLIC
My Commission Expires: _04/13/2008_

# EXHIBIT I

**Declaration of Candida Stokes**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DEREK DEDE, #253851, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   **Civil Action No. 1:07-CV-929-WKW** |
| | ) |
| SHERIFF BEN MOATES, et al., | ) |
| | ) |
|     Defendants. | ) |

## DECLARATION OF CANDIDA STOKES
## PURSUANT TO 28 U.S.C. § 1746

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | ) |
| COUNTY OF COFFEE | ) |

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Candida Stokes, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.    My name is Candida Stokes. I am over the age of nineteen and competent to make this affidavit.

2.    I am a deputy with the Coffee County Sheriff's Department. I have served in that capacity for four months. Prior to that I served with the Elba, Alabama Police Department for nine months. Prior to that I was an officer with the Montgomery, Alabama Police Department for approximately five years. For four of those years I was a field training officer. Prior to that I was an officer with the Prattville, Alabama Police Department for five years. Prior to that I served approximately 1 1/2 years as a deputy in the Coffee County Sheriff's Department. I have a total of approximately 13 years in law enforcement.

1

3.    I read the Plaintiff's complaints in this matter and have personal knowledge of some of the facts underlying the Plaintiff's claims.

4.    In general, I have no duties in the Coffee County Jail. Consequently, I had nothing to do with the Plaintiff's medical care. I do, however, occasionally provide assistance to jailers at the jail when inmates become unruly.

5.    On March 3, 2007, two days after the devastating tornado that struck Enterprise, Alabama in Coffee County, I was on patrol. I was assisting Enterprise with calls, patrolling the damaged areas of Enterprise, and answering our regular calls.

6.    I became aware of a riot in the Coffee County Jail when I heard a radio call for assistance from one of the corrections officers.

7.    When I arrived at the jail I went immediately to Cell Block 2 where Jailers English and Caradine were attempting to get the 43 inmates to lock down. There were inmates all over the cell block and, from what I could observe, few if any of the inmates were obeying the jailers' commands.

8.    The first inmate I encountered upon entering Cell Block 2 was Inmate Marcus Snell. At the time, I did not know Inmate Snell, and did not learn his name until later. Inmate Snell began cursing me almost immediately. When I ordered him to return to his cell, Inmate Snell responded, "Fuck you!" I ordered him a second time to lock down and pulled my X-26 TASER. He again refused and said "Fuck you, taze me bitch!"

9.    I am certified in the use of the TASER device. The X-26 is an Electronic Control Device (ECD) that can be used in two modes. In the "drive stun" mode, the device must be placed against the subject in order to deliver an electrical charge. The electrical charge disrupts both the sensory and motor nervous systems. In the drive stun mode the effect of the TASER is more localized to the area in which the TASER comes into contact. In the cartridge mode, the

TASER fires two barbed probes from a cartridge attached to the front of the TASER. The probes remain attached to the front of the device by filament wires that conduct an electrical charge from the TASER through the barbs and into the subject's body. When used in the cartridge mode, the TASER effects a larger person of the subject's body and, depending upon where the probes strike, can effect the entire body.

10.    I used the TASER in the drive stun mode against Inmate Snell. He ran back to his cell. At that time, I determined to take him into custody in order to ascertain his identity, investigate whether he was one of the inmates who instigated the riot, and to determine whether he was suffering any adverse effects from the TASER.

11.    I was forced to use the TASER twice more on Inmate Snell when he refused commands to place his hands behind his back. Eventually he complied and I was able to place handcuffs on him.

12.    As I was escorting Inmate Snell from the cell, an inmate in Cell 17, whom I later identified to be Alex Pyatt, threw a liquid that I believed to be urine on me from the upper tier of the cell block.

13.    I continued taking Inmate Snell out of the cell block as Deputies Jeff Shelton, Austin Redman, and Neal Bradley were entering the cell block. I stated to them that an inmate in Cell 17 had just thrown urine on me.

14.    I exited the cell block and took Inmate Snell to Intake to process him. Mr. Snell did not suffer any ill effects from the TASER and did not request medical treatment.

15.    I did not go into Cell Block 2 again that night.

16.    At no time on March 3, 2007, did I have any interaction with the Plaintiff. I did not use any force on him or even issue him a command. From what I understand, the Plaintiff remained in his cell during the entire incident.

3

17.    I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this declaration, and that the above statements were made by drawing from my personal knowledge of the situation.

Executed on this the ___13___ day of March, 2008.

Candida Stokes

# EXHIBIT J

**Affidavit of Austin Redman**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DEREK DEDE, #253851, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  1:07-CV-929-WKW |
| | ) | |
| SHERIFF BEN MOATES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

AFFIDAVIT OF AUSTIN REDMAN

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | ) |
| COUNTY OF COFFEE | ) |

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Austin Redman, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.    My name is Austin Redman.  I am over the age of nineteen and competent to make this affidavit.

2.    I am a deputy with the Coffee County Sheriff's Department.  I have served in that capacity for approximately five years.  Prior to that I served with the Elba Police Department as an officer for two years.  Prior to that I served as an officer with the New Brockton, Alabama Police Department for one year.  I have approximately eight years in law enforcement.

3.    I read the Plaintiff's complaints in this matter and have personal knowledge of the some of the facts underlying the Plaintiff's claims.

4.    I know nothing of the Plaintiff's claims related to tuberculosis and had nothing to do with the medical treatment the Plaintiff received in the jail.

5.    On March 3, 2007, just two days after a tornado struck Enterprise, Alabama in Coffee County, I was on duty and performing perimeter patrol around the area affected by the tornado.

6.    While I was on my supper break I heard several radio calls from jailers at the Coffee County Jail. Shortly thereafter, a call for assistance at the jail came over the radio and I responded to the jail.

7.    I arrived at the jail at the same time as Sergeant Jeffery Shelton and Deputies Neal Bradley and Michael Hines. We were told that the inmates in Cell Block 2 were refusing to lock down and were fighting.

8.    Within a week prior to March 3, 2007, I personally participated in a search of the jail that resulted in at least one shank being discovered and removed from Cell Block 2.

9.    I obtained my 12 gauge shotgun that I only used for bean bag rounds and loaded it with the four bean bag rounds that I had in preparation to go into Cell Block 2.

10.    Prior to this time I had received instruction on the use of less-than-lethal shotgun rounds from the Department firearms instructor, Sergeant Shelton.

11.    I, along with Sergeant Shelton, and Deputies Bradley and Hines went to Cell Block 2 and met Deputy Candida Stokes as she was escorting an inmate I later learned was Marcus Snell to Intake from Cell Block 2. Deputy Stokes stated that she had to use her TASER on the inmate and that another inmate had thrown a cup of urine on her from Cell 17. One of the jailers standing nearby said the inmate who threw the urine was Alex Pyatt and he was in Cell 17.

12.    When we entered the cell block, we began yelling at the inmates to lock down and return to their cells. Several inmates complied and ran to their cells and slammed the doors.

2

13.     The four of us then went to Cell 17 on the second floor.  By this time, the inmates in Cell 17 had closed the door.  Our intent was to take Inmate Pyatt into custody for his assault on Deputy Stokes.

14.     There were only two inmates in Cell 17.  I later learned that they were Alex Pyatt and Timothy Council.

15.     When we got to the door of Cell 17, we called out to "Central", the control room that runs the entire jail, to unlock Cell 17.

16.     Simultaneously, we instructed Inmates Pyatt and Council to get down on the ground.  Inmate Pyatt complied with our instructions.  Pyatt did not.

17.     When the door to the cell opened, the four of us entered the cell.

18.     Deputy Bradley continued to command Council to get down on the floor.  The inmate did not comply and cursed Deputy Bradley.

19.     Deputy Hines and I took Inmate Pyatt out of the cell.  Deputy Hines then placed handcuffs on Pyatt and took him to Intake.  I reentered the cell.

20.     I observed Deputy Bradley deploy his TASER on Inmate Council.

21.     The TASER appeared to initially have an effect on Council, but after he slid to the floor, did not seem to affect him again.

22.     Council was able to crawl under a bunk in the cell.

23.     During this time, Deputy Bradley continued giving the inmate commands to come out from under the bunk.  Inmate Council did not comply.

24.     I also instructed Council to come out from under the bunk and he still refused to comply.  To the contrary, the inmate went as far under the bunk as he could and began moving various items that were under the bunk.

3

25.     In light of this, as well as the earlier discovery of a shank in the same cell block, I became concerned that the inmate might be attempting to obtain a weapon.

26.     Sergeant Shelton fired his shotgun. I observed the bean bag bounce off the floor and strike Inmate Council in the hip.

27.     Council did not make any sound when the bean bag struck him, but he immediately came out from under the bunk.

28.     Council was handcuffed and removed from the cell.

29.     Deputy Bradley took Council straight to Intake without further incident. I had no further interaction with Council that night.

30.     No further force was used on the inmate at any time after the bean bag round struck him.

31.     After Inmates Pyatt and Council were removed from Cell Block 2, I remained to deal with other inmates who were still refusing orders to lock down.

32.     It took, all told, approximately 20-25 minutes for us to regain control of the cell block.

33.     After Cell Block 2 was secured, I went back in with Sheriff Sutton. Sheriff Sutton told the inmates that they ought to be ashamed of themselves because they had forced us to abandon our efforts to help their families in order to deal with them.

34.     There were no more problems in the jail that night or since that night.

35.     I had no interaction whatsoever with Inmate Dede during this incident.

36.     I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this affidavit, and that the above statements were made by drawing from my personal knowledge of the situation.

4

Executed on this the ___26___ day of February, 2008.

_____

Austin Redman

**SWORN TO** and **SUBSCRIBED** before me this 26th day of February, 2008.

NOTARY PUBLIC

My Commission Expires: March 4, 2008

# EXHIBIT K

**Affidavit of Jeffrey Shelton**

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **ANTHONY RICHARDS, SR.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 1:07-cv-337-MEF-TFM** |
| | ) | |
| **DAVE SUTTON, SHERIFF, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**AFFIDAVIT OF JEFFERY W. SHELTON**

| | |
|---|---|
| **STATE OF ALABAMA** | ) |
| | ) |
| **COUNTY OF COFFEE** | ) |

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Jeffery W. Shelton, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.      My name is Jeffery W. Shelton. I am over the age of nineteen and competent to make this affidavit.

2.      I am a deputy with the rank of sergeant in the Coffee County Sheriff's Department. I have served in that capacity for fifteen months. Prior to that I served with the Elba, Alabama Police Department as an officer for over four years. Prior to that I was with the New Brockton, Alabama Police Department for approximately two years. I also served in the Birmingham, Alabama Police Department for approximately eight years. Prior to that I was with the Decatur, Alabama Police Department for approximately three years. I have nearly 19 years in law enforcement.

1

3.     I read the Plaintiff's complaints in this matter and have personal knowledge of some of the facts underlying Inmate Council's claims.

4.     I know nothing of the Plaintiff's claims related to tuberculosis and had nothing to do with the medical treatment the Plaintiff received in the jail.

5.     On March 3, 2007, just two days after a tornado struck Enterprise, Alabama in Coffee County, I was on duty and performing perimeter patrol around the area affected by the tornado.

6.     While I was on my supper break I heard several radio calls from jailers at the Coffee County Jail. Shortly thereafter, a call for assistance at the jail came over the radio and I responded to the jail.

7.     I arrived at the jail at the same time as Deputies Neal Bradley, Austin Redman and Michael Hines. We were told that the inmates in Cell Block 2 were refusing to lock down and were fighting.

8.     Within a week prior to March 3, 2007, I personally participated in a search of the jail that resulted in at least one shank being discovered and removed from Cell Block 2.

9.     I obtained my 12 gauge shotgun that I only used for bean bag rounds and loaded it with the four bean bag rounds that I had in preparation to go into Cell Block 2.

10.    In approximately 2004 I attended a Tactical Shotgun Instructor Development Course. One day of the instruction was dedicated to non-lethal rounds such as bean bags. This training certified me as a user and instructor for tactical shotgun – including less-than-lethal rounds.

11.    I, along with Deputies Bradley, Redman and Hines went to Cell Block 2 and met Deputy Candida Stokes as she was escorting an inmate I later learned was Marcus Snell to Intake from Cell Block 2. Deputy Stokes stated that she had to use her TASER on the inmate and that

2

another inmate had thrown a cup of urine on her from Cell 17.  One of the jailers standing nearby said the inmate who threw the urine was Alex Pyatt and he was in Cell 17.

12.    During the course of retaking the jail, I was required to fire two bean bag rounds at inmates who were refusing to return to their cells or cease rioting/instigating others to riot.

13.    However, the Plaintiff was not one of the inmates I encountered.  I did not use any force on him whatsoever.

14.    It took, all told, approximately 20-25 minutes for us to regain control of the cell block.

15.    After Cell Block 2 was secured, I went back in with Sheriff Sutton.  Sheriff Sutton told the inmates that they ought to be ashamed of themselves because they had forced us to abandon our efforts to help their families in order to deal with them.

16.    There were no more problems in the jail that night or since that night.

17.    I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this affidavit, and that the above statements were made by drawing from my personal knowledge of the situation.

Executed on this the _21⁶ᵗʰ_ day of February, 2008.

_____
Jeffery W. Shelton

**SWORN TO** and **SUBSCRIBED** before me this _26th_ day of February, 2008.

_____
NOTARY PUBLIC
My Commission Expires:_04/13/2008_

3

# EXHIBIT L

**Inmate File, Medical Transport Sheet dated 6/7/06**



### COFFEE COUNTY JAIL
### BEN MOATES, SHERIFF
### ZACK ENNIS, ADMINISTRATOR
phone: 334-894-5535
fax: 334-804-6231

## MEDICAL TRANSPORT SHEET

Date: 6/7/06

Name of Inmate: Derek Dede

Reason for Medical  Care: Doctor Appt

Transported From: Coffee County Jail
Transported To: Dr. Cochran
Time of Transport: 1015
Transporting Officer: S. Roberts

## Inmate Classification (Check One)

Federal_____
State_____
County _x_
(City) Enterprise_____ Elba_____ New Brockton_____ Kinston_____

*This form to be completed for each inmate receiving any medical treatment

# EXHIBIT M

**Inmate File, Patient Record dated 6/7/06**

# COFFEE COUNTY (ALA.) JAIL
## PATIENT RECORD

Name Derek Dede

Address _____

Date 6/7/06    Time 1015  (A.M.) P.M.

☒ County Prisoner    ☐ State Prisoner    ☐ Other _____

Age _____    Sex Male

BP 162/80

Complaint: Doctor appt - c/o failure HA's, dizziness, headaches, visit available by visit to Derek by Derek for a chronic, high blood pressure @ time.

History of Complaint: _____

Doctor Impression: Muscle tension cephalgia hypert.

Treatment: Mageic folic ½ tab

_____
Doctor Signature

Quality Printing Co.

# EXHIBIT N

**Declaration of Henry Stewart Cochran**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

DEREK DEDE,                          )
                                     )
        Plaintiff,                   )
                                     )
v.                                   )        Civil Action No. 1:07-cv-344-MEF
                                     )
SHERIFF BEN MOATES, et al.,          )
                                     )
        Defendants.                  )

DECLARATION OF HENRY STEWART COCHRAN
PURSUANT TO 28 U.S.C. § 1746

STATE OF ALABAMA          )
                          )
COUNTY OF COFFEE          )

1.      My name is Henry Stewart Cochran. I am over the age of nineteen and competent to make this declaration.

2.      I have been a medical doctor for 32 years. I obtained my M.D. from Wake Forrest University in 1975. I did my residency at Fitzsimmons Army Hospital. I served 21 years as a physician in the United States Army. I have my own family practice and also work as an emergency room physician at Elba General Hospital.

3.      I treated the Plaintiff on June 7, 2006.

4.      The Plaintiff's chief complaint at the time was headaches, dizziness, and passing out (he stated he had done the latter twice in one week). The Plaintiff also complained of a knot on his back.

5.      The Plaintiff did not complain of tuberculosis or symptoms related to the disease.

1

6.    Upon examination, I noted no abnormalities in his ears, nose, and throat. Neurologically he was normal. He did have soreness on his temple which is indicative of muscle tension headaches. Finally, the Plaintiff had a lypoma on his back.

7.    A lypoma is a benign fat cell tumor.

8.    With respect to the Plaintiff's headaches, dizziness, and passing out, I concluded that he had nothing more than muscle tension headaches. There were no indications whatsoever that the Plaintiff had any other condition that would cause dizziness or black outs.

9.    I prescribed Norgesic Forte for the Plaintiff's headaches.

10.    The lypoma did not require any intervention whatsoever. The only time I ever recommend surgical intervention for lypomata is when it presents a significant cosmetic problem for the patient. The Plaintiff's lypoma is on his back where this was not a concern. In any case, removal of a lypoma is an elective procedure.

11.    I saw the Plaintiff again on September 1, 2006, regarding his continued complaints about headaches and dizziness. He provided a history of having passed out, but I have no knowledge of the veracity of those claims. He also stated that he was unable to take the Norgesic Forte I had prescribed because it gave him rectal bleeding.

12.    On September 1, 2006, Plaintiff was somewhat combative and verbally abusive to me and I refused to provide any further treatment.

13.    I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this affidavit, and that the above statements were made by drawing from my personal knowledge of the situation.

Executed on this the __28th__ day of June, 2007.


_Henry Stewart Cochran_
Henry Stewart Cochran

2

# EXHIBIT O

**Inmate File, Medical Transport Sheet dated 9/1/06**



**COFFEE COUNTY JAIL**
**BEN MOATES, SHERIFF**
**ZACK ENNIS, ADMINISTRATOR**
phone: 334-894-5535
fax: 334-804-6231

**MEDICAL TRANSPORT SHEET**

Date: *09/01/06*

Name of Inmate: *Derek Dede*

Reason for Medical Care: _____

_____

_____

Transported From: *CCJ*

Transported To: *Dr Cochan*

Time of Transport: *9:00*

Transporting Officer: *C/O Caradn*

## Inmate Classification (Check One)

Federal_____
State_____
County _X_
(City) Enterprise_____ Elba_____ New Brockton_____ Kinston_____

*This form to be completed for each inmate receiving any medical treatment

# EXHIBIT P

**Inmate File, Medical Transport Sheet dated 10/5/06**



COFFEE COUNTY JAIL
BEN MOATES, SHERIFF
ZACK ENNIS, ADMINISTRATOR
phone: 334-894-5535
fax: 334-804-6231

MEDICAL TRANSPORT SHEET

Date: 10/5/06

Name of Inmate: Derek Dede

Reason for Medical Care: Doctor Appointment

Transported From: Coffee County Jail

Transported To: Doctor Roberts

Time of Transport: 2:00

Transporting Officer: Michael Bryn

Inmate Classification (Check One)

Federal _____
State _____
County ___✓___
(City) Enterprise _____ Elba _____ New Brockton _____ Kinston _____

*This form to be completed for each inmate receiving any medical treatment

COPY

# EXHIBIT Q

**Inmate File, Medical Transport Sheet dated 10/6/06**



COFFEE COUNTY JAIL
BEN MOATES, SHERIFF
ZACK ENNIS, ADMINISTRATOR
phone: 334-894-5535
fax: 334-804-6231

MEDICAL TRANSPORT SHEET

Date: _10-6-06_

Name of Inmate: _Derek Dedy_

Reason for Medical Care: _CT of Head_

_____

_____

Transported From: _County Jail_

Transported To: _Elba General Hospital_

Time of Transport: _08:15_

Transporting Officer: _M. Bryan_

## Inmate Classification (Check One)

Federal _____

State _____

County _X_

(City) Enterprise _____ Elba _____ New Brockton _____ Kinston _____

*This form to be completed for each inmate receiving any medical treatment